**IN THE COURT OF APPEALS OF IOWA**

No. 13-0168
Filed April 30, 2014

**IN THE MATTER OF D.A.S.,**
**Alleged to be Seriously**
**Mentally Impaired,**

**D.A.S.,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Poweshiek County, Joel D. Yates,

Judge.

        Respondent appeals the decision of the court finding he was seriously

mentally impaired and should be involuntarily committed.  **AFFIRMED.**

        Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant.

        D.A.S., Grinnell, pro se.

        Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer,

Assistant Attorney General, and Rebecca L. Petig, County Attorney, for appellee

State.

        Considered by Vaitheswaran, P.J., Tabor, J., and Huitink, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**HUITINK, S.J.**

Respondent appeals the decision of the court finding he was seriously mentally impaired and should be involuntarily committed. There is clear and convincing evidence in the record to support the court's decision. We affirm.

## I. Background Facts & Proceedings

On January 15, 2013, police officers responded to a report of a man wearing a ski mask peeking into windows. The officers apprehended D.A.S., who refused to cooperate with the officers. D.A.S. was criminally charged with trespass and public urination. The next day, D.A.S.'s father and step-mother filed applications seeking involuntary hospitalization for D.A.S. on the ground he was seriously mentally impaired. They noted D.A.S. had been diagnosed with paranoid schizophrenia and had been refusing medication or medical help of any kind. They were concerned he could put himself or others in danger, as exemplified by his failure to cooperate with officers.

A judicial magistrate ordered that D.A.S. should be detained at a hospital for a mental health examination. A physician's report, filed pursuant to Iowa Code section 229.10 (2013), stated D.A.S. was mentally ill and had been diagnosed with chronic paranoid schizophrenia. Dr. Rickey Wilson stated D.A.S. was not capable of making responsible decisions with respect to having hospitalization or treatment because he had no insight into his need for treatment. Dr. Wilson also stated D.A.S. was likely to physically injure himself or others, citing his "threats to others as per petition." Inpatient treatment was recommended until D.A.S.'s situation was stabilized.

A hearing was held on January 22, 2013. The State relied upon the information presented in the physician's report. D.A.S. testified he had a bladder condition "in which I had to go immediately when I had to go," but he felt he was getting over that condition. He stated he was already seeking treatment, but did not give any specifics. The court determined D.A.S. was seriously mentally impaired and ordered impatient treatment. D.A.S. appealed the decision of the court, claiming the record does not support a finding he is seriously mentally impaired.

## II. Standard of Review

In involuntary commitment proceedings we review challenges to the sufficiency of the evidence for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The Iowa Supreme Court has stated:

> The allegations made in an application for involuntary commitment must be proven by clear and convincing evidence. Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."

*Id.* (citations omitted).

## III. Merits

D.A.S. asserts the State did not present sufficient evidence at the commitment hearing to support a finding he was seriously mentally impaired and should be placed in inpatient treatment. The term "seriously mentally impaired" is defined as:

> [T]he condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with

respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with a person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(17).

The definition of serious mental impairment is considered to have three elements: (1) a person has a mental illness; (2) the person lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment; and (3) the person is likely to inflict physical injury on the person's self or others, to inflict serious emotional injury on certain persons, or is unable to satisfy the person's physical needs. *In re J.P.*, 574 N.W.2d 340, 343 (Iowa 1998). D.A.S. asserts the State did not present clear and convincing evidence of the second and third elements.

We first address the second element. In his application for involuntary hospitalization, D.A.S.'s father stated, "He refused meds or to work with doctors." D.A.S.'s stepmother stated he "refuses medication and medical help of any kind." The examining physician, Dr. Wilson, found D.A.S. had no insight into his need for treatment. While D.A.S. testified at the commitment hearing that he was already seeking treatment, there was no evidence about whether he was actually addressing his mental health concerns. We conclude the State presented clear and convincing evidence D.A.S. lacked sufficient judgment to make responsible

decisions with respect to his need for hospitalization or treatment. *See* Iowa Code § 229.1(17); *J.P.*, 574 N.W.2d at 343.

For the third element, the State alleged D.A.S. was likely to inflict serious physical injury on himself or others. The term "likely" means "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "This element requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Id.* (citation omitted). Additionally, the State must show the danger the person poses to himself or others has been evidenced by a recent overt act, attempt, or threat. *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986).

On January 15, 2013, D.A.S. was the subject of a police report concerning a man wearing a ski mask who had been peeking or staring into windows. His actions involved trespass onto the property of others and public urination. He refused to cooperate with officers when he was arrested. In his application, D.A.S.'s father expressed concern that D.A.S. had the potential of confronting an officer who might not know of his mental health diagnosis. He noted D.A.S. had refused to cooperate with police officers. His stepmother stated, "There is concern that he may put himself (and perhaps others) in danger. A recent example of this is his refusal to cooperate with police or other authorities." Dr. Wilson stated D.A.S. was likely to physically injure himself or others, citing his threats to others. We conclude there is clear and convincing evidence in the record to show D.A.S. was likely to injure himself or others, and this was exemplified by his recent overt act of refusing to cooperate with officers at the time he was arrested. *See* Iowa Code § 229.1(17); *Mohr*, 383 N.W.2d at 542.

We affirm the decision of the district court finding D.A.S. was seriously mentally impaired. Based on the recommendation in the physician's report, the court properly ordered D.A.S. placed in inpatient treatment for a psychiatric evaluation and appropriate treatment.

**AFFIRMED.**