# IN THE COURT OF APPEALS OF IOWA

No. 14-1513
Filed May 20, 2015

IN THE MATTER OF S.L.S.,
Alleged to be Seriously
Mentally Impaired,

S.L.S.,
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Johnson County, Marsha Bergan,

Judge.


    S.L.S. appeals the district court's ruling finding her seriously mentally

impaired. **AFFIRMED.**


    Robert E. Peterson, Carroll, for appellant.

    Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant

Attorney General, Janet M. Lyness, County Attorney, and Anne Lahey, Assistant

County Attorney, for appellee.


    Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

S.L.S. appeals from a civil commitment order issued pursuant to Iowa Code chapter 229 (2013). She contends the State failed to prove by clear and convincing evidence the grounds for commitment. We affirm the judgment of the district court.

I.

Chapter 229 authorizes involuntary civil commitment for a person who is "seriously mentally impaired." A person is "seriously mentally impaired" or possesses a "serious mental impairment" when the person

> lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness means any of the following criteria:
> a. Is likely to physically injury the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical debilitation, or death.

Iowa Code § 229.1(17).

This definition has three elements: (1) the person must be afflicted with a mental illness; (2) the person lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment; and (3) the person is likely, if allowed to remain at liberty, to inflict physical injury on the "person's self or others," to inflict emotional injury on the statutorily-designated class of persons, or to suffer physical debilitation or death due to the inability of the person to satisfy the person's needs. *See* Iowa Code § 229.1(17); *In re*

*Foster*, 426 N.W.2d 374, 377 (Iowa 1988). The third element is commonly referred to as the endangerment element. *See In re J.P.*, 574 N.W.2d 340, 344 (Iowa 1998). Although the civil commitment statute does not explicitly require such proof, our courts have required dangerousness to be established by a recent overt act, attempt, or threat. *See Matter of Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). Ultimately, however, the endangerment element is "grounded on future rather than past danger." *Id.*

## II.

"An involuntary commitment proceeding is a special action triable to the court as an ordinary action at law." *J.P.*, 574 N.W.2d at 342. "There shall be a presumption in favor of the respondent, and the burden of evidence in support of the contentions made in the application shall be upon the applicant." Iowa Code § 229.12(3)(a). The applicant must prove the elements supporting commitment by clear and convincing evidence. *See* Iowa Code § 229.12(3)(c). "Clear and convincing evidence is more than a preponderance of the evidence but less than evidence beyond a reasonable doubt." *J.P.*, 574 N.W.2d at 342. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.*

We review challenges to the sufficiency of the evidence for errors at law. *See* Iowa R. App. P. 6.907; *J.P.*, 574 N.W.2d at 342. "[T]he district court's findings of fact are binding on us if supported by substantial evidence." *J.P.*, 574 N.W.2d at 342. Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence. *Id.*

We conclude there is substantial evidence supporting the district court's findings that S.L.S. is afflicted with a serious mental impairment that renders her unable to make responsible decisions with respect to hospitalization and treatment. Dr. Bennett Poss testified during the commitment hearing. He testified S.L.S. was admitted to the University of Iowa Hospital's in-patient psychiatric unit from July 19th to August 20th and then transferred to the partial hospitalization program. Dr. Poss was S.L.S.'s treating physician. He met with S.L.S. and reviewed her medical files. Dr. Poss testified S.L.S. has otherwise specified psychotic disorder, delusional disorder, or schizophrenia. Each is a defined mental illness in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V). Dr. Poss concluded S.L.S.'s serious mental impairment makes her unable to make responsible decisions with respect to hospitalization and treatment.

We also conclude there is substantial evidence to support the district court's findings that it is likely S.L.S., if she is allowed to remain at liberty, will cause harm to herself or others. The term "likely" means "probable or reasonably to be expected." *Foster*, 426 N.W.2d at 377. S.L.S. believes she is a nonconsensual participant in a governmental and medical industry conspiracy to conduct research on the brain, optogenetics, and nerve stimulation. She believes microchips have been implanted into her vagina, breasts, anus, and ears. S.L.S. also believes the government is sending images into her mind, assaulting her with sound waves, and reading her thoughts. She believes the implanted microchips can be activated by others through the use of cell phones

and other electronic devices. S.L.S. testified she suffers from "electronic stimulation to [her] private areas." She testified this causes her physical and psychic pain, likening it to "electronic rape." Over the last several years, S.L.S. has travelled the country seeking a safe place where the microchips could no longer be activated remotely. During the course of her travels, she was involuntarily hospitalized on at least two other occasions, in New Jersey and Texas.

Recent acts demonstrate S.L.S. is a risk to herself. *See* Iowa Code § 229.1(17); *Mohr*, 383 N.W.2d at 542. S.L.S. has been traveling the country by vehicle without any apparent ready access to food, clothing, essential medical care, or shelter. *See* Iowa Code § 229.1(17). In the written application in support of an order for involuntary hospitalization, Dr. Segraves explained that S.L.S.'s delusions were "responsible for her not eating for an extended period of time" prior to hospitalization in this case. She has fasted for a period of twenty-nine days. Dr. Poss opined that S.L.S. has been tormented by her persecutory delusions and his been driven to suicidal thoughts requiring treatment. S.L.S. admitted she had contemplated suicide as recent as March 2013. *See Mohr*, 383 N.W.2d at 542 (finding attack of father years before sufficient overt act for involuntary commitment given mental state).

Recent acts also demonstrate S.L.S. poses a risk of physical injury to others. *See* Iowa Code § 229.1(17); *Mohr*, 383 N.W.2d at 542. S.L.S. possesses firearms, which she keeps in her vehicle. She threatened she would use the firearms to defend herself against those who were trying to control her

microchips. While S.L.S. testified she would not harm anyone unless she was sure that the person meant to harm her, the very nature of her delusions make this a meaningless guarantee. For example, S.L.S. testified that certain people presented themselves to her in a "manner that would lead me to believe that they had access to this technology [control of the microchips]." Innocent bystanders are at risk of being shot by S.L.S. due to her delusions people can and do try to control her microchips with electronic devices. *See In re B.B.*, 826 N.W.2d 425, 433 (Iowa 2013) (affirming commitment order where person was diagnosed with psychotic disorder and threatened harm toward others if he perceived they were "trying to do something to him"). Further, S.L.S. would not provide information to the treatment team regarding the location of her car to allow access to the weapons. The failure to provide access to the firearms is a recent act demonstrating a potential risk of harm. *See In re D.A.S.*, No. 13-0168, 2014 WL 1714379, at *2 (Iowa Ct. App. Apr. 30, 2014) (affirming where person made threat to others and failed to cooperate with authorities).

III.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**