# IN THE COURT OF APPEALS OF IOWA

No. 13-1916
Filed October 14, 2015

**IN RE THE MATTER OF B.J.C.,**
**Alleged to be Seriously Mentally**
**Impaired**

**B.J.C.,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


　　B.J.C. appeals his involuntary hospitalization for serious mental

impairment. **AFFIRMED.**


　　Kristin L. Denniger, Cedar Rapids, for appellant.

　　Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant

Attorney General, Janet Lyness, County Attorney, and Anne M. Lahey, Assistant

County Attorney, for appellee.


　　Considered by Vaitheswaran, P.J., Potterfield, J., and Sackett, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SACKETT, Senior Judge.**

B.J.C., who is in the custody of the Iowa Department of Corrections, appeals following his involuntary hospitalization for serious mental impairment. He contends there is not clear and convincing evidence he is seriously mentally impaired. *See In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998) ("The allegations made in an application for involuntary commitment must be proven by clear and convincing evidence."). We review these challenges to the sufficiency of the evidence supporting involuntary hospitalization for errors at law. *Id.*

Iowa Code section 229.1(17) (2013) defines "serious mental impairment" as "the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." Additionally, in order to be found "seriously mentally impaired" the evidence must show that because of that mental illness, the person is "likely to physically injure the person's self or others if allowed to remain at liberty without treatment," "likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment," or "unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death." Iowa Code § 229.1(17)(a)-(c).

Clear and convincing evidence shows B.J.C. is a person with a mental illness. A "mental illness" is defined as "every type of mental disease or mental

disorder" with the exception of intellectual disabilities or "insanity, diminished responsibility, or mental incompetency as the terms are defined and used in the Iowa criminal code or in the rules of criminal procedure." *Id.* § 229.1(10). B.J.C. has a long history of mental health treatment, beginning as early as age seven. Dr. Gary Keller, a licensed psychiatrist and B.J.C.'s treating physician at the Iowa Medical and Classification Center, testified that before B.J.C. was under his care, B.J.C. had "many different diagnoses over a course of time," specifically citing a diagnosis of "bipolar disorder as well as a history of schizophrenia." Dr. Keller testified he had diagnosed B.J.C. with and had been treating him for schizophrenia due to his ongoing paranoia and delusions of being persecuted.

The evidence also establishes that because of his mental illness, B.J.C. lacks the necessary judgment to make decisions regarding his treatment. In spite of his lengthy history of treatment for mental health issues, B.J.C. denies that he suffers from an illness or needs medication. He has a history of noncompliance with medication, and when noncompliant, his symptoms worsen and his inappropriate behaviors escalate.

Finally, clear and convincing evidence demonstrates B.J.C. is a danger to himself. Due to his paranoid and delusional thinking, B.J.C. believes there is a plot by the Iowa Department of Corrections to kill him. The evidence shows he initiated altercations with other inmates that caused him injury, though he believes he is being attacked as part of the plot. B.J.C. was refusing to eat regularly as part of a "protest" against the food trays, which he alleges are dirty and contaminated. He also broke a sprinkler head and ate one or more of the

metal pieces. In addition, B.J.C. has a history of self-harming behavior and was suspected of cutting himself just prior to the initiation of these proceedings.

Because clear and convincing evidence in the record meets the requirements for involuntary hospitalization under Iowa Code Chapter 229, we affirm.

**AFFIRMED.**