**In the Interest of J.P., Alleged to be Seriously Mentally Impaired,**

**J.P., Appellant.**

No. 97–1095.

Supreme Court of Iowa.

Feb. 18, 1998.

Mary Lynn Neuhaus, Dubuque, for appellant.

Thomas J. Miller, Attorney General, Mary W. Vavroch, Assistant Attorney General, and Lyle Galliart, County Attorney, for appellee State of Iowa.

Kenneth J. Kress, Iowa City, for amici curiae Alliance for the Mentally Ill of Iowa, Inc. and Iowa Coalition Against Domestic Violence.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Jane[1] appeals from the district court's order affirming the judicial hospitalization referee's finding that she is seriously mentally impaired and ordering her to undergo outpatient treatment. We find the order is not supported by clear and convincing evidence and reverse.

I. *Background Facts and Proceedings.*

Jane is a forty-year-old married woman with two children, ages eight and twelve. She has been married to John for nineteen years. Jane is well educated with a bachelor of arts degree in psychology and a master of arts degree in counseling and psychology. She is the primary care-giver to the children and home schools the youngest. Recently, the condition of the marriage of Jane and John has caused stress in the family.

In November 1996, Jane was voluntarily hospitalized for one week. She was prescribed medication for depression and received counseling. After she left the hospital, she continued treatment on an outpatient

---

1. Because J.P. and her husband have the same initials, we will refer to them as "Jane" and "John" in this opinion; these are not their real names.

basis. Jane was concerned about possible side effects from the medication she was taking for depression and discontinued its use. She informed her doctor of her decision to stop taking the medication.

On April 23, 1997, Jane removed herself and her daughters from the family home and went to the YWCA Battered Women's Shelter. While she was packing suitcases for the stay at the shelter, the older daughter, apparently on her own initiative, called John and told him Jane was taking them from the home but did not tell them where they were going. John left work and rushed home but when he arrived Jane and the children were gone.

The next day Jane sent the older daughter to school as was normal. John called his daughter at school and she told him where she, her sister, and her mother were staying. John and his superior at work went to the county courthouse and filed an application alleging serious mental impairment and requesting Jane be taken into immediate custody. An order was issued directing the sheriff to pick up and transport Jane to the psychiatric unit of Mercy Health Center. After a hearing on April 28, the hospitalization referee found Jane was seriously mentally impaired and ordered outpatient commitment for her. She appealed the decision of the hospitalization referee to the district court. The district court affirmed the order. On appeal Jane argues the commitment statute is unconstitutionally vague on its face and as applied, and that the court's order is not supported by clear and convincing evidence.

## II. *Scope of Review.*

■ An involuntary commitment proceeding is a special action triable to the court as an ordinary action at law. *In re Oseing,* 296 N.W.2d 797, 800–01 (Iowa 1980). Because an involuntary commitment proceeding is an ordinary action at law, we review challenges to the sufficiency of the evidence for errors at law. Iowa R.App. P. 4. The allegations made in the application for involuntary commitment must be supported by clear and convincing evidence. Iowa Code § 229.12(3) (1997). Clear and convincing evidence is more than a preponderance of the evidence

but less than evidence beyond a reasonable doubt. *In Interest of N.C.,* 551 N.W.2d 872, 873 (Iowa 1996). "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In Interest of L.G.,* 532 N.W.2d 478, 481 (Iowa App.1995).

■ In prior decisions involving involuntary commitment we have said the elements of serious mental impairment must be established by clear and convincing evidence and the district court's findings of fact are binding on us if supported by substantial evidence. *See In re Foster,* 426 N.W.2d 374, 376 (Iowa 1988); *In re T.C.F.,* 400 N.W.2d 544, 547 (Iowa 1987); *In re Mohr,* 383 N.W.2d 539, 541 (Iowa 1986); *Oseing,* 296 N.W.2d at 800–01. Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence. We will not set aside the trial court's findings unless, as a matter of law, the findings are not supported by clear and convincing evidence.

## III. *Discussion.*

A. Constitutionality of Iowa Code Section 229.1(14)(b).

Jane alleges the civil commitment statute is unconstitutionally vague on its face and as applied to her. Because we decide this case on other grounds, we need not resolve the constitutional issue at the present time. *See State v. Quintero,* 480 N.W.2d 50, 51 (Iowa 1992).

B. Was There Clear and Convincing Evidence to Support the Order of Commitment?

■ A person who is "seriously mentally impaired" may be the subject of an involuntary civil commitment. Iowa Code § 229.6. The Code defines "seriously mentally impaired" as:

"Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization

or treatment, and who because of that illness meets any of the following criteria:

a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if allowed to remain at liberty without treatment.

c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

*Id.* § 229.1(14).

The definition of serious mental impairment has three elements. The respondent must be found to have (1) a mental illness, consequently (2) to lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment" and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on a designated class of persons, or be unable to satisfy the person's physical needs. *Id.; Foster,* 426 N.W.2d at 376–77.

The first element of serious mental impairment is that the person have a mental illness. At the hearing before the judicial hospitalization referee Dr. Thampy, the court-appointed psychiatrist, testified Jane suffered from a psychotic disorder. While he stated he was not able to determine the exact nature of the disorder, he opined that it was probably either a delusional disorder or a major depression. No medical report as required by Iowa Code section 229.10(2) was received by the court. On appeal Jane does not challenge the finding that she had a mental illness, therefore we need not determine if this element was proven.

■ The existence of a mental illness, by itself, does not establish grounds for commitment. *Oseing,* 296 N.W.2d at 801. A mental illness "does not preclude an individual's ability to make rational judgments in all cases or with respect to all matters." Randall Bezan-

son, *Involuntary Treatment of the Mentally Ill in Iowa: The 1975 Legislation,* 61 Iowa L.Rev. 262, 275 n. 68 (1975). The second element that must be proven is that because of the mental illness the person "lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." Iowa Code § 229.1(14).

■ Virtually no evidence was presented on this element. There was no finding by the court that Jane lacked sufficient judgment to make responsible decisions in regard to her hospitalization or treatment. The State argues her decision not to take prescribed medication is indicative of a lack of responsibility. We disagree. In determining whether a decision is responsible, the focus must be on whether the grounds for the decision are rational or reasonable not what conclusion is reached. A decision, although medically inadvisable, may be rationally reached, and if so, it is not the court's place to second guess the decision.

Jane discontinued taking medication because she was concerned about its side effects. She testified:

> I have requested that I know exactly what [the] side effects are and everything from it .... it's supposedly a new drug and so I really would like to know more what it's going to do to me and what it's used for before [I take it] because I think I have a right to know what it's going to do to my body.

Concern about the potential side effects of a medication is a reasonable apprehension. Jane also indicated she preferred psychotherapy to chemotherapy. Given her educational background in psychology and counseling, this decision had a reasonable basis. We find there was not clear and convincing evidence to support the district court's finding that Jane lacked the ability to make responsible decisions regarding her treatment.

The third element of serious mental impairment involves likely physical injury to one's self or others or the infliction of serious emotional injury on specified persons. *Id.* The referee found:

[Jane] is a danger to others only as to her delusional disorder and acting upon said delusional thought process. Further, the court finds that [Jane] has placed an emotional trauma upon those unable to avoid contact, namely spouse and children. Most significantly, on date of admission [Jane] had taken the child[ren] to the battered women's shelter and although there may be certain domestic stressors involved in this case, the court finds that the emotional trauma to the family has been significant.

■ We have said the endangerment element "requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *Mohr,* 383 N.W.2d at 542. The danger the person poses to herself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* In this case there is no evidence of any overt act, attempt or threat by Jane. Dr. Thampy testified "she has not really presented as a hazard to ... herself or others." John testified that Jane never threatened the children, himself or anybody else with harm.

■ The referee found Jane had placed "emotional trauma upon those unable to avoid contact." We note that a finding of emotional trauma is an insufficient basis for involuntary hospitalization. The Code requires "serious emotional injury." Iowa Code § 229.1(13). "Serious emotional injury" is defined as:

> Injury which does not necessarily exhibit any physical characteristics, but which can be recognized and diagnosed by a licensed physician or other qualified mental health professional and which can be causally connected with the act or omission of a person who is, or is alleged to be, mentally ill.

*Id.* No finding of serious emotional injury was made by the court.

■ In finding that Jane placed emotional trauma on the family, the referee relied on Jane's removing herself and the children to the battered women's shelter as a source of the trauma. We are concerned by this reliance. Domestic abuse against women is a serious problem in Iowa and the nation as a whole. *Final Report on the Supreme Court Task Force on Courts' and Communities' Response to Domestic Abuse,* at 2 (1994). A woman who removes herself to a shelter on the basis of an actual or perceived threat should not have to fear the action she took to protect herself will have negative repercussions. Any emotional trauma that resulted from Jane's availment of the battered women's shelter should not have been considered in the decision of whether to order involuntary treatment.

**REVERSED.**