## IN THE COURT OF APPEALS OF IOWA

No. 13-0872
Filed March 26, 2014

**IN THE MATTER OF T.E.E.,**
        Appellant,

Alleged to be Seriously Mentally Impaired.
_____

        Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.


        T.E.E. appeals from a district court order requiring hospitalization due to serious mental impairment. **REVERSED.**


        Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.


        Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant Attorney General, Patrick Jennings, County Attorney, and Joshua Widman, Assistant County Attorney, for appellee State.


        Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

T.E.E. appeals a district court order committing her to inpatient, then outpatient, treatment. We reverse.

### I. Background Facts and Proceedings.

On May 22, 2013, an application for involuntary commitment was filed by T.E.E.'s mother in district court alleging that T.E.E. was mentally impaired and believed to be a danger to herself and to others. *See* Iowa Code § 229.6 (2013) (setting forth procedure for commencement of involuntary commitment proceeding). In support thereof, the application stated:

> My daughter left a horrible voicemail message on my cell phone and sent demented texts to me. She told me about the time she tried to kill herself. She did take a lot of pills before and had her stomach pumped before and now she is acting crazy as her friends told me. She shaved her hair all off and got a tattoo on her neck that looks like cut marks and blood.

T.E.E.'s stepfather filed an affidavit in support of the application, stating: "I have known [T.E.E.] since 1998 and am aware of her mental disorder. She was prescribed medication for depression while she was in high school because she tried to commit suicide. I am concerned for her well-being and for the well-being of her children." Based upon the application and supporting affidavit, the district court found there was probable cause to believe T.E.E. was "seriously mentally impaired" and was "likely to injure [herself] or others if allowed to remain at liberty." T.E.E. was then taken into custody and detained at a Sioux City hospital.

On May 29, 2013, T.E.E. was examined by Dr. Muller pursuant to Iowa Code section 229.10(2). Dr. Muller opined T.E.E. was mentally ill, diagnosing

her with a "mood disorder, nos; bipolar mood disorder, most recent manic; c/o attention deficit hyperactivity disorder; c/o substance dependence vs. cause." Dr. Muller opined that, because of her illness, T.E.E. "lack[ed] sufficient judgment to make responsible decisions with respect to [her] hospitalization and treatment." He also opined that, if left at liberty, T.E.E. was likely to injure herself or others. Dr. Muller opined that T.E.E. was seriously mentally impaired.

A hearing on the application was held in June, and the applicant was not able to be present at the hearing. The State asked the court to excuse the applicant for "good cause," and T.E.E. objected and requested the application be dismissed. She argued that, "per Iowa Court Rules 12.19 and 13.19, the applicant has to be [at the hearing] unless . . . the Court . . . finds that their testimony is not necessary. I believe in this case the testimony is extremely necessary." The court reserved ruling on the objection and motion to dismiss, and it proceeded with the hearing.

Dr. Muller testified regarding his examination of T.E.E. and his subsequent report. He testified:

> [Initially, T.E.E.] was brought in as a problem that her mother, and [T.E.E.] was indicating that she wasn't having any problems, but we had seen that she had pressured speech on the unit. She also had some paranoia signs on the unit as well as some agitation. She does, has very little insight into that she's having difficulty understanding that initially there was DHS involvement as well that placed [her] children with the [applicant] at least temporarily. As far as substance abuse goes, there's been allegations I believe that she has been using some marijuana. She denied using any marijuana and she won't allow any urine "tox" screens, and she will not take any medications while she is on the unit.
> . . . .
> . . . [S]he's had significant problems on the unit with pressured speech, she's had significant problems on the unit with some irritability at times for the staff. She has, when I've evaluated her at

> times, she was having problems with paranoia. She disorganized, has looseness of association, I think that she is having problems really making good decisions at this point as well. I think that she seems unable to really make decisions when it comes to making a decision about the urine "tox" screen, making decisions about signing releases so you can talk to the family, trying to work with us so that we can. Her main goal, she said, is to get out of the hospital. I guess she continues to not really—she has to cooperate, but, you know, if she would kind of cooperate with the evaluation, kind of cooperate with treatment, she'd probably have a much better chance of getting out of the hospital quicker. She doesn't seem to really understand that.
>
> She also doesn't really understand, seem to have any insight, and she really does have some difficulties at this time.

Dr. Muller admitted he was alerted to T.E.E.'s possible substance dependence or abuse by the applicant, but he testified he could not confirm or deny the applicant's report because T.E.E. refused to provide a urine screen or allow him to talk to others about her behaviors. He testified that, regardless of her possible marijuana use, he thought

> [T.E.E.'s] paranoia and pressured speech is probably from bi-polar mood disorder or mood disorder unspecified; however, if she used marijuana, you can have some paranoia as well too and so I feel that that marijuana may contribute to her behavior in regards to her bi-polar mood disorder or mood disorder unspecified I guess.

Dr. Muller testified that T.E.E. had not threatened to injure anyone, but he was still concerned because she had not allowed the hospital staff to talk to anyone about her condition. He was also concerned about her relationship with her children if she did not receive treatment.

The affiant, T.E.E.'s stepfather, also testified. He explained the applicant could not come to the hearing because she had teaching-certification training out of state that had been set for two months. The affiant testified that he had known T.E.E. since 1998 and that she tried to commit suicide sometime before 2001.

At the close of evidence, T.E.E. renewed her motion to dismiss on the basis that the applicant was not present for the hearing. The court denied the motion. On the basis of the Dr. Muller's testimony, the court found that T.E.E. was seriously mentally impaired and ordered her commitment for continued care at the hospital, as recommended by Dr. Muller. On June 5, 2013, T.E.E.'s commitment was changed from inpatient to outpatient status.

T.E.E. now appeals her commitment.

## II. *Standard of Review.*

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's findings of fact are binding upon this court if supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence. *Id.* "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt," and it requires there be "no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428 (citation and internal quotation marks omitted).

## III. *Discussion.*

Involuntary commitment is appropriate only if the court finds a person has a serious mental impairment. Iowa Code § 229.12(2)(c). A serious mental impairment means the person is mentally ill, and because of that illness both lacks sufficient judgment into the needed treatment and poses a danger to the person's self or others. *Id.* § 229.1(17). That dangerousness can be manifested

in any of three ways: (a) the likelihood the person will physically injure himself or others if allowed to remain at liberty without treatment; (b) the likelihood the person will inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment; or (c) the person's inability to satisfy his needs for nourishment, clothing, essential medical care, or shelter so that it is likely he will suffer physical injury, physical debilitation, or death. *Id.* § 229.1(17)(a)-(c). On appeal, T.E.E. challenges the court's findings with respect to subsections (a) and (b). The court having made no finding with respect to subsection (c), it is not at issue here.

The "endangerment" element of section 229.1(17) requires proof that T.E.E. was "likely" to pose a serious danger to her health or the physical safety of herself or others. "Likely" means "probable or reasonably to be expected." *B.B.*, 826 N.W.2d at 428. This element "requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *Id.* (citation and quotation marks omitted). However, the element also "requires that the threat the patient poses to himself or others be evidenced by a *recent overt act*, *attempt*, *or threat*." *Id.* (internal quotation marks omitted) (emphasis added). "[B]ecause predicting dangerousness is difficult and, at best, speculative," stringent proof is required. *In re Foster*, 426 N.W.2d 374, 377-78 (Iowa 1988).

In finding T.E.E. was seriously mentally impaired, the court explained:

> I've heard the testimony of Dr. Muller, have looked over his report. He describes behavior as paranoia and pressured speech that would lead him to believe a likely diagnosis of bi-polar mood disorder or mood disorder, and he also expressed the opinion [T.E.E] lacks sufficient judgment to make responsible decisions as evidenced by her unwillingness to take medication or provide information that may assist in her treatment plan, and that if nothing were done, that she could cause injury to herself or emotion injury to others who are unable to avoid contact with her.

However, there was no evidence of a "recent overt act, attempt, or threat" to support the court's conclusion T.E.E. presents a danger to herself or others. We conclude the evidence relied upon by the court in making its determination of dangerousness does not rise to the level of "stringent proof" required to make such a determination. Thus, the evidence presented was simply too speculative and too remote in time to provide clear and convincing evidence of dangerousness.

Although we recognize the concern T.E.E.'s family has for her, she cannot be involuntarily committed unless all the elements of serious mental impairment are proven by clear and convincing evidence. We conclude the evidence presented at T.E.E.'s involuntary commitment hearing was insufficient to establish T.E.E. is a danger to herself or others. Accordingly, we reverse. Because we find this issue dispositive, we need not address her other claim raised on appeal.

**REVERSED.**