**IN THE COURT OF APPEALS OF IOWA**

No. 14-1954
Filed February 24, 2016

**IN THE MATTER OF S.B.,
Alleged to be Seriously
Mentally Impaired**

**S.B.,**
       Respondent-Appellant.
_____

       Appeal from the Iowa District Court for Madison County, Randy V. Hefner,

Judge.


       S.B. appeals a district court ruling affirming her continued involuntary

commitment to a residential care facility.  **AFFIRMED.**


       Cami N. Eslick of Eslick Law, Indianola, for appellant.

       Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer,

Assistant Attorney General, for appellee.


       Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

S.B. appeals a district court ruling affirming her continued involuntary commitment to a residential care facility. She argues the court's finding that she remains "seriously mentally impaired" is not supported by substantial evidence.

## I.    *Background Facts and Proceedings*

This case began with an application to involuntarily hospitalize S.B. based on her threats of self-harm. A magistrate ordered S.B. placed at the Clarinda Mental Health Institute.

S.B. was released to outpatient care but concerns with her behavior led to an order transitioning her to a residential care facility. She remained in the facility for several years. During the fourth year of her stay, the magistrate ordered continued inpatient treatment at the same facility. S.B. contested the order and requested a placement hearing. *See* Iowa Code § 229.14A(1) (2015) (setting forth "respondent's right to request a placement hearing to determine if the order for placement or transfer of placement is appropriate"). The court granted the request for a hearing and subsequently confirmed the prior findings and orders. S.B.'s appeal of the ruling was dismissed as untimely.

Two months later, the magistrate entered another order reaffirming S.B.'s residential placement at the same facility. S.B. again contested the magistrate's findings and requested another placement hearing. The magistrate again confirmed the placement after concluding S.B. was "mentally ill, and said mental illness ma[de] her a danger to herself or others."

S.B. timely appealed this decision to the district court, which held a de novo trial pursuant to Iowa Code section 229.21(3)(c). The court affirmed the magistrate's order. This appeal followed.

## II.    Sufficiency of the Evidence

S.B. challenges the sufficiency of the evidence supporting the district court's findings. The Iowa Supreme Court has stated, "[T]he elements of serious mental impairment must be established by clear and convincing evidence and the district court's findings of fact are binding on us if supported by substantial evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). *Accord In re B.B.*, 826 N.W.2d 425, 428, 432 (Iowa 2013); *see also In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) ("The substantial evidence test governs review of trial court findings of fact.").

> A person is "seriously mentally impaired" if the person has
>
> mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> (a) Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> (b) Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> (c) Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(17). This definition contains three elements: (1) mental illness, (2) lack of sufficient judgment, and (3) the criteria labeled (a), (b), and (c),

which encompass the threshold requirement of dangerousness. *Oseing*, 296 N.W.2d at 800-01 (analyzing predecessor statute).

S.B. "does not dispute that she has a mental illness." She challenges the evidence supporting the district court's findings on the "lack of sufficient judgment" element and the dangerousness components.

## A. Lack of Judgment

As a preliminary matter, the State argues S.B. waived a challenge to this element. We disagree. Although S.B. did not set forth a separate brief point on "lack of judgment," her argument encompasses this ground. *See In re Mohr*, 383 N.W.2d 539, 541-42 (Iowa 1986) (finding the respondent's denial of treatment "in the face of a conclusive showing that he has a serious need for help" relevant to the "lack of judgment" element). Accordingly, we proceed to the merits.

The "lack of judgment" element "requires the State to prove that the person is unable because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not." *In re B.T.G.*, 784 N.W.2d 792, 797 (Iowa Ct. App. 2010). The record before the district court reveals the following facts.

S.B. has a long history of noncompliance with her medication regimen. For example, in 2012, she refused an anti-psychotic medication twenty-nine times within a two month period. The residential care facility addressed her refusals by barring her from leaving the facility for two months each time she violated medical protocol. S.B.'s compliance improved and, in the year

preceding the district court hearing, she only declined her medications three times.

Nonetheless, S.B. refused medication just two weeks before the district court hearing. Although she ultimately took the medicine the next morning, she commented that her refusal would "buy [her] more time in the facility." Notably, S.B. had six days of accrued leave she could have used outside the facility. A reasonable fact finder could have found her reason for refusing medication reflected poor judgment.

Professionals uniformly confirmed S.B.'s lack of judgment on treatment issues. A psychiatric nurse practitioner who treated S.B. opined that her insight concerning the importance of taking her medication "would erode" outside the facility and "then you would have quite a difficulty," given her past "suicidal thoughts and psychotic symptoms." Similarly, a health professional who evaluated S.B. reported that she showed "significant concerns . . . in being able to manage her medications for both psychotropic and medical issues." Finally, the facility administrator testified S.B. "would probably regress quite quickly outside" the controlled environment of the facility. She opined, "[I]f she refuses [her medication] here, what will she do if she's not held accountable by nobody?" The district court appropriately gave weight to these opinions. *See In re R.S.*, No. 15-0713, 2015 WL 7574238, at *2 (Iowa Ct. App. Nov. 25, 2015) (upholding finding where "physician's report and the treating doctor's testimony each establish the same"); *In re S.S.*, No. 15-0494, 2015 WL 6508809, at *5 (Iowa Ct. App. Oct. 28, 2015) (finding lack of judgment established where "[i]t was the

judgment of each examining doctor that [respondent] was not capable of making responsible decisions with respect to hospitalization or treatment").

In light of this evidence, the district court reasonably could have given little credence to S.B.'s recognition that she would need to take medications "for the rest of [her] life." *See In re B.T.G.*, 784 N.W.2d at 798 ("Although [respondent] has indicated he will comply with his medications, we cannot find his testimony persuasive given his lengthy history of noncompliance and resistance."). The court could have questioned S.B.'s sincerity based on her reluctance to continue taking the single anti-psychotic drug that her health care provider testified was the "gold standard" for treatment of her condition. As for S.B.'s reliance on her overall compliance with her medication regimen while on leave, the court could have found S.B. followed her regimen for fear of losing future leave and, without this "stick," her compliance would have faltered.

We conclude substantial evidence supports the district court's finding of lack of judgment.

## B. Dangerousness

As noted, the statute contains three components of dangerousness and the State only needs to satisfy one. *See* Iowa Code § 229.1(17). We will focus on the third component, whether the person with mental illness is "unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death." *Id*. at 229.1(17)(c). Within this list, the only need of

concern is "essential medical care." *Id.* The State must establish a "recent overt act, attempt, or threat." *Mohr*, 383 N.W.2d at 542.

The district court concluded, "Given [S.B.]'s array of physical and mental ailments requiring medication, a failure to manage her medication would likely result [in] harm to her." The record contains substantial evidence to support this finding.

We have already documented health care professionals' recent concerns about whether S.B. would continue with mental health treatment if she were living independently. Additionally, they expressed doubts about her ability to treat a potentially fatal physical condition—type I diabetes. The facility administrator testified S.B.'s "diabetes would be out of control" if she discontinued her medication. While she acknowledged S.B. had never been hospitalized for this condition while on leave, she described S.B.'s blood sugars as both elevated and too low at various times. She testified, "I don't know that [S.B.] can always understand what she's doing to herself that causes that high or low [blood sugar]."

This testimony found support in the notes of a psychiatric registered nurse practitioner who interviewed S.B. According to her documentation, just two months prior to the hearing S.B. could not list the medications she took and admitted to having a very poor memory. And, as noted, S.B. refused medication just two weeks before the district court hearing. Finally, in her own testimony, S.B. failed to demonstrate either insight into, or an ability to manage, her diabetes.

The district court reasonably could have found that S.B.'s reluctance to continue with the mental health regimen prescribed by her health care providers and her medication refusal two weeks prior to the hearing, when combined with her lack of understanding about the need to follow a strict medical regimen for her diabetic condition, jeopardized her health and satisfied this dangerousness component.

We conclude substantial evidence supports the district court's finding of a "serious mental impairment." Accordingly, we affirm the ruling continuing S.B.'s involuntary commitment at the residential care facility.

**AFFIRMED.**