# IN THE COURT OF APPEALS OF IOWA

No. 15-1983
Filed June 15, 2016

**IN THE INTEREST OF THE MATTER OF K.H.,**
**Alleged to be Seriously Mentally Impaired,**

**K.H.,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister,

Judge.

A respondent challenges the finding he is seriously mentally impaired.

**AFFIRMED.**

Nina M. Forcier of Forcier Law Office, P.L.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for appellee State.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

K.H. appeals from a civil commitment order issued pursuant to Iowa Code chapter 229 (2015). He argues the applicant failed to prove he was "seriously mentally impaired" within the meaning of the statute. He argues the court failed to consider whether inpatient treatment was the least restrictive environment available for him. Finally, K.H. contends the order of forced medication is unconstitutional.

I.

K.H. argues there is not substantial evidence to support a finding of serious mental impairment. "An involuntary commitment proceeding is a special action triable to the court as an ordinary action at law." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Therefore, our review is for correction of errors at law. *See id.* A determination that someone is seriously mentally impaired must be supported by clear and convincing evidence. *See* Iowa Code § 229.13(1); *In re Oseing*, 296 N.W.2d 797, 799 (Iowa 1980). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). The clear-and-convincing standard is less onerous than proof beyond a reasonable doubt, but more so than a preponderance of the evidence. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's findings of fact are binding on appeal if they are supported by substantial evidence. *See J.P.*, 574 N.W.2d at 342. Evidence is substantial if a reasonable trier of fact would accept it as adequate to reach a conclusion. *See In re Foster*, 426 N.W.2d 374, 376 (Iowa 1988).

"Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20).

K.H. concedes the applicant proved K.H. is a person with mental illness. Dr. Kantamneni, the examining doctor, diagnosed K.H. with schizoaffective disorder. He also has a history of depression and psychosis.

The second element is a lack of judgmental capacity due to the mental illness. This element requires proof "that the person is unable, because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not." *In re Mohr*, 383 N.W.2d 539, 541 (Iowa 1986) (citation omitted). K.H. argues there was insufficient evidence establishing the lack of judgmental capacity. He argues he was participating in treatment with a psychiatrist and taking his antidepressant medication as prescribed. K.H. argues his failure to submit to antipsychotics was rational because of the side effects of the medication. K.H. also argues there is not sufficient evidence to demonstrate his decisions were not responsible.

We conclude there is substantial evidence the respondent lacks judgmental capacity due to his mental illness. Dr. Kantamneni conducted the inpatient examination of K.H. The doctor testified at the hearing before the referee, and the doctor issued the statutorily-required report. At the appeal hearing, tried de novo, the parties agreed the district court could consider Dr. Kantamneni's testimony from the original hearing and the doctor's report even though the doctor did not testify at the trial de novo. The doctor testified K.H. needed to take an antipsychotic medication to treat his condition. She recommended antipsychotics because K.H. "gets agitated easily" and "has paranoid thoughts." In the report, the doctor concluded that K.H. lacked judgmental capacity because of his mental illness. We recognize K.H. is treating with another provider, but K.H.'s doctor did not testify or provide a report. The only evidence from a medical professional shows K.H. lacks judgmental capacity regarding hospitalization and treatment because of his mental health conditions. We find substantial evidence supports this element. *See, e.g., B.B.*, 826 N.W.2d at 433 (citing examining doctor's report and testimony as evidence sufficient to satisfy this element).

The final element is dangerousness—whether K.H. is likely to injure himself or others if allowed to remain at liberty without treatment. This element requires proof of a recent overt act, attempt, or threat. *See Mohr*, 383 N.W.2d at 542. An overt act in the context of physical injury "connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury."

*Foster*, 426 N.W.2d at 378. K.H. argues there is not sufficient evidence that he is dangerous within the meaning of the statute and cases interpreting the same.

We conclude there is substantial evidence establishing the dangerousness element. At the time material to this matter, K.H. was on supervised release following a federal conviction for making threats to federal employees. On October 4, 2015, K.H. sent an email to two managers of correctional facilities in West Union and Waterloo. The email contained language referencing a recent school shooting and K.H.'s own history of violence, including an assault of a peace officer. It referenced threats K.H. made in the past. It concluded, "My threats are justified." The rambling, incoherent tone of the email suggested a person behaving irrationally and unpredictably. The recipients of the emails notified K.H.'s probation officer.[1] The probation officer and a supervising probation officer testified the recipients of the emails felt threatened. K.H. also left a voicemail for his probation officer that could have reasonably been construed as threatening. There was also testimony K.H. had been making derogatory statements to public officials in voicemails, including the federal judge who sentenced him in a previous case and the clerk of court at that federal courthouse. The serious nature of the threat was magnified by K.H.'s criminal history, which includes assault and the conviction for which he was incarcerated and subsequently placed on supervised release. The finding of dangerousness necessarily requires a "predictive judgment." *See Mohr*, 383 N.W.2d at 542.

---

[1] In the federal system, a defendant may be sentenced to a term of incarceration followed by supervised release. The term of supervised release is supervised by a probation officer within the Probation and Pretrial Services System of the United States Courts.

Here, witnesses familiar with K.H.'s past credibly testified to their concerns upon learning of the email. Substantial evidence supports the finding of dangerousness.

## II.

K.H. next argues the district court erred in ordering him to inpatient treatment because it is not the least restrictive environment available. "It is not only the customary procedure, but the constitutionally and statutorily mandated requirement, to treat even seriously mentally impaired persons in the least restrictive environment medically possible." *Leonard v. State*, 491 N.W.2d 508, 512 (Iowa 1992). K.H. believes inpatient treatment is not the least restrictive environment available because he was under the care of a psychiatrist and a counselor.

The State contends, and we agree, that error has not been preserved on this issue. The alternative of outpatient treatment was neither argued to nor decided by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). K.H. did not move to amend or enlarge the district court's decision. Error has therefore not been preserved. *See* Iowa R. App. P. 6.903(2)(g)(1).

## III.

Finally, K.H. contends the forced medication order violated his constitutional right to due process. Our review is de novo. *See State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). In determining if there has been a constitutional violation, we must balance a person's liberty interest against the

relevant state interests. *See Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). When a state creates a liberty interest, "due process protections are necessary 'to insure that the state-created right is not arbitrarily abrogated.'" *Vitek v. Jones*, 445 U.S. 480, 489 (1980) (citation omitted). There is a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221 (1990).

With respect to the substantive right at issue, we have previously interpreted *Harper* to mean the Due Process Clause of the United States Constitution "confers upon respondent no greater right than that recognized under state law." *In re R.M.P.*, 521 N.W.2d 765, 767 (Iowa Ct. App. 1994). Here, state law does not confer a right to refuse treatment under the circumstances presented. An individual hospitalized or detained under chapter 229 normally has the right to refuse treatment by shock therapy or chemotherapy. *See* Iowa Code § 229.23(2). "Chemotherapy" is defined as the "treatment of an individual by use of a drug or substance which cannot legally be delivered or administered to the ultimate user without a physician's prescription or medical order." Iowa Code § 229.1(4). The proposed antipsychotic medication would fall under this definition. However, the individual's "right to refuse treatment by chemotherapy shall not apply during any period of custody authorized by . . . section 229.11." Iowa Code § 229.23(2). K.H.'s custody was authorized by section 229.11. That exception to the right to refuse treatment "shall extend only to chemotherapy treatment which is, in the chief medical officer's judgment, necessary to preserve the patient's life or to appropriately control behavior by the person which is likely to result in physical injury to that

person or others if allowed to continue." Iowa Code § 229.23(2). As discussed above, the applicant has proved that absent medication, K.H. is a physical threat to himself or others. "Because Iowa law does not confer a protected interest under Iowa Code section 229.23(2), appellant cannot argue for a greater right under federal law." *R.M.P.* 521 N.W.2d at 767. "There is no question but that once these procedures were complied with, and while [K.H.] was an inpatient [the hospital] could prescribe intramuscular injections of psychotropic medication despite [K.H.'s] wishes." *Lappe v. Loeffelholz*, 815 F.2d 1173, 1176-77 (8th Cir. 1987).

Moreover, the State has satisfied the *Washington* test that allowed the State in that case to treat a prison inmate with a serious mental illness with antipsychotic drugs against his will. *Washington* requires findings that (1) the patient suffers from a mental illness; (2) the patient poses a threat of serious harm to oneself, others, or their property; and (3) the treatment is in the patient's medical interest. *See Washington*, 494 U.S. at 227. There is no doubt K.H. suffers from a mental illness. There was a finding of dangerousness, as discussed above. There was credible testimony from an examining physician that treatment is in K.H.'s medical interest. That testimony was uncontroverted by any other medical professional.

K.H. contends we should reach a different result under the Iowa Constitution. "As a general rule, the task of materially altering substantive or procedural rights is best left to the General Assembly or the Supreme Court of Iowa." *Spencer v. Philipp*, No. 13-1887, 2014 WL 4230223, at *2 (Iowa Ct. App. Aug. 27, 2014). We decline K.H.'s request.

IV.

The finding that K.H. was seriously mentally impaired is supported by substantial evidence. Error was not preserved on K.H.'s challenge to inpatient treatment. K.H.'s constitutional argument against forced medication fails. We affirm the judgment of the district court.

**AFFIRMED.**