**IN THE COURT OF APPEALS OF IOWA**

No. 16-0932
Filed January 11, 2017


**IN THE MATTER OF G.G.,**
**Alleged to Be Seriously Mentally Impaired,**

**G.G.,**
　　Respondent-Appellant.
_____


　　Appeal from the Iowa District Court for Johnson County, Magistrate Edward J. Leff.


　　G.G. appeals the magistrate's determination that he was seriously mentally impaired.  **AFFIRMED.**


　　Willie E. Townsend, Coralville, for appellant.

　　Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.


　　Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

G.G. is a sixty-six-year-old veteran who was diagnosed with bipolar disorder and was treated with medication, which stabilized his manic episodes for approximately twenty years. In 2016, G.G.'s physician told him to "taper off" the medication. G.G. followed this instruction, but the result was a manic episode. G.G.'s wife took him to a Veterans Administration hospital. On the way, G.G. got out of the vehicle when the car stopped. His wife was able to get him back in the vehicle and to the emergency room, where he was admitted.

A magistrate entered an emergency hospitalization order after finding probable cause to believe G.G. was seriously mentally impaired and was likely to injure himself or others if not immediately detained. Following a hearing, the magistrate determined G.G. was seriously mentally impaired and civilly committed him to the hospital on an inpatient basis. Four days later, the magistrate terminated the commitment. G.G. filed an appeal with the district court. After the matter was set for hearing, the State filed a motion to dismiss. G.G. resisted, but the court dismissed the appeal on the ground that it was moot. This appeal followed.

We first address G.G.'s assertion the district court was wrong in dismissing his appeal as moot. Because the commitment order was terminated, his appeal to the district court and now his appeal to this court are both, in essence, moot, but the collateral-consequences exception to the mootness doctrine permits review of the merits. *See In re B.B.*, 826 N.W.2d 425, 429 (Iowa 2013) (noting the "stigma of mental illness" and concluding "a party who has

been adjudicated seriously mentally impaired and involuntarily committed is presumed to suffer collateral consequences justifying appellate review").

We turn to the merits of the magistrate's commitment order. The magistrate's findings "are binding on us if supported by substantial evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998).

A person is "seriously mentally impaired" if the person has:

> mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> (a) Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment;
> (b) Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment;
> (c) Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20) (2016). The definition contains three elements: (1) mental illness, (2) lack of sufficient judgment, and (3) the criteria labeled (a), (b), and (c), which encompass the threshold requirement of dangerousness. *In re Oseing*, 296 N.W.2d 797, 800-01 (Iowa 1980) (analyzing predecessor statute). G.G. challenges the sufficiency of the evidence on the second and third elements. The magistrate found G.G. lacked judgmental capacity in that he was, "Impaired; currently in manic state and unable to make sound treatment decisions." The record supports this finding as G.G. was not medically compliant until after arriving at the V.A. hospital and refused medication until he was confronted by security officers. He then accepted his needed medication.

The third element, or the "dangerous" prong requires evidence of a "recent overt act, attempt or threat." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). An overt act "connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). The magistrate found this element satisfied based on G.G.'s "current[] manic state." The magistrate also cited G.G.'s "[a]ttempt[] to run away while in [a] vehicle on [the] way to [the] hospital" and the "[p]olice presence necessary to get him to take medications upon admission." Substantial evidence supports this finding and satisfies the requirement of a recent overt act.

We affirm the civil commitment order.

**AFFIRMED.**

McDonald, J., concurs; Vaitheswaran, J., dissents.

**VAITHESWARAN, Judge.** (dissenting)

I respectfully dissent.

Mental illness alone does not establish grounds for commitment. *In re J.P.*, 574 N.W.2d at 343. It follows that mental illness alone cannot serve as the predicate to a finding of lack of judgment or dangerousness. The "manic episode" cited in the commitment order was simply a symptom of G.G.'s mental illness. As for G.G.'s compliance with his medication regimen, he testified he was "[a]bsolutely" taking his medications and his psychiatrist confirmed he had been taking his medications as prescribed. As the majority notes, G.G. only "tapered off" his medication pursuant to his doctor's orders.

Nor, in my view, does G.G.'s decision to exit the vehicle on his way to the hospital show dangerousness. As noted, the vehicle was stopped and G.G.'s wife was able to get him to the emergency room despite this momentary disruption. Although a psychiatrist testified G.G. was agitated on his arrival, the only "aggressive" acts she could point to were his failure to follow directions when he first came in and a police presence to "contain him in his room" because he was "pacing around the unit." The psychiatrist acknowledged the officers "did not physically restrain him." She also acknowledged she "ha[d not] seen anything . . . that would make [her] think he'd be a risk to others." In my view, this evidence does not constitute substantial evidence to support a finding of dangerousness.

I would reverse the civil commitment order. This disposition would essentially resolve G.G.'s additional contention that the magistrate should have released him to the custody of his wife.