# IN THE COURT OF APPEALS OF IOWA

No. 17-0031
Filed September 13, 2017

**IN THE MATTER OF M.F.,**
**Alleged to Be Seriously Mentally Impaired,**

**M.F.,**
            Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Bradley J.

Harris, Judge.


        A respondent challenges his involuntary commitment under Iowa Code

chapter 229 (2016).  **AFFIRMED.**


        Kathryn J. Mahoney, Waterloo, for appellant.

        Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for appellee State.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

M.F. contends the district court wrongly determined he was seriously mentally impaired and required involuntary hospitalization. Specifically, he asserts the State did not present clear and convincing evidence that he posed a physical or emotional danger to himself or others. Because we find substantial evidence in the record to support the district court's finding, we affirm.

### I. Background Facts and Proceedings

Beginning in high school, M.F.'s parents began to notice challenges with M.F.'s mental health. Eventually, M.F. quit school, quit a full-time job, attempted suicide twice, and started sending conspiracy mail to the F.B.I. M.F. was incarcerated for three years for making false threats to the federal government.

M.F. was released from federal prison in January 2016. After approximately seven months of good behavior, M.F. received a large disability check and began to use the money to buy drugs. M.F. began to verbally attack family, make threats to bank employees regarding a conspiracy to deny him inheritance money, and provoked a wrestling match with his father.

On December 1, 2016, M.F.'s father filed an application for order of involuntary hospitalization. A judicial hospitalization referee entered an order pursuant to Iowa Code section 229.13 (2016) finding M.F. to be seriously mentally impaired and ordering him to be committed to a psychiatric unit.

M.F. appealed the referee's order to the district court. A hearing was held on December 5, 2016. The district court took judicial notice of the physician's report and received as evidence an updated report by a second physician as to

M.F.'s current condition. The district court entered its ruling on December 27, concluding:

> The court finds that the contention that the respondent is seriously mentally impaired has been sustained by clear and convincing evidence, to-wit:
> 1. Respondent lacks insight and judgment into his mental illness.
> 2. Respondent will benefit from treatment and medication.
> 3. Because of respondent's illness, he is likely to physically injure himself or others if allowed to remain at liberty without treatment and is likely to inflict serious emotional injury upon members of his family who lack reasonable opportunity to avoid contact with him if he is allowed to remain at liberty without treatment.
> Respondent has a history of substance abuse. He recently appeared at the home of his parents for the purpose of obtaining his property and getting food. While at his parents' residence, an altercation occurred between respondent and his father. At the time of the prior hearing in this matter on December 5, 2016, respondent again initiated an incident between himself and his father which resulted in respondent spitting upon his father's face.
> . . . .
> Both physicians' reports express the opinion that respondent is a danger to himself and others.
> The combination of all of the above factors leads this court to determine that respondent is likely to physically injure himself or others or is likely to inflict serious mental injury upon members of his family who are unable to avoid contact with him if respondent is allowed to remain at liberty without treatment.

M.F. now appeals.

## II. Standard of Review

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The State must prove the allegations in an involuntary commitment proceeding by clear and convincing evidence. *Id.* Clear and convincing evidence means "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (quoting *In*

*re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998)). This clear-and-convincing-evidence standard is less onerous than proof beyond a reasonable doubt. *J.P.*, 574 N.W.2d at 342.

### III. Serious Mental Impairment

Pursuant to Iowa Code section 229.1(20), a person is "seriously mentally impaired" when the person has a mental illness and

> because of that illness [the person] lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

This definition contains three elements: (1) mental illness, (2) lack of sufficient judgment, and (3) the criteria labeled (a), (b), and (c), which encompass the threshold requirement of dangerousness. *In re Oseing*, 296 N.W.2d 797, 800–01 (Iowa 1980). M.F. challenges the evidence supporting the district court's finding on the dangerousness component. M.F. does not challenge the evidence supporting the finding that he has a mental illness and lacks sufficient judgment.

"[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* "In the context of civil commitment . . . an 'overt act'

connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988).

In the report admitted at the December 5 hearing, the physician opined:

> 16. In your judgment, is [M.F.] likely to physically injure . . . himself or others? Yes[.]
>    What overt acts have led you to conclude [M.F.] is likely to physically injure . . . himself or others? [M.F.] is putting himself or others at risk by harassing them and taking the law into his own hands.

Similarly, the second physician noted "[i]nformation provided by a [social worker] that it has been reported that patient has information [and] materials regarding bombs. He was admitted here following a jail stay for criminal harassment of his parents. He reports people in invisible suits putting other people in wood chippers."

M.F. argues the dangerousness element was not proven by clear and convincing evidence because there were no recent overt acts, attempts, or threats. To support this contention, M.F. claims there have been no incidents since his release from federal prison, the suicide attempts occurred approximately eight years ago, M.F.'s father attacked him when he tried to get food from his father's house, and M.F.'s father describes him as "not a violent person" and has never seen M.F. "swat a fly." We disagree.

The record shows multiple and escalating threats of harm to family members and members of the community, assault on family, and self-harm, beginning with two suicide attempts, a three-year federal prison sentence for threats made to the government, threats to bank employees, and verbal threats

made to family. In addition, the day after Thanksgiving 2016, M.F. and his father were involved in a physical altercation when M.F. arrived at his father's home after Thanksgiving, looking for food. After M.F. pounded on the door and entered the home, an altercation ensued where his father wrestled him to the ground and used a choke hold on M.F. to constrain him. M.F. responded by "scratching" his father. A few days later, on December 5, 2016, in the courthouse prior to entering the courtroom for the hospitalization hearing, altercation occurred between M.F. and his father. The social worker described the incident as follows:

> I heard [M.F.] yelling at his father—yelling at his father that he wished that he would die. That he hated him. I saw him lunge at his father and one of the tech had to hold him back, and then when he was in the arms of the techs, he spit at the side of [the father's] head.
>         Q. Okay. And from what you saw, did it appear to be an act of aggression—physical aggression? A. It appeared to me that if the techs wouldn't have stopped him, that he would have put his hands on his father.

The record establishes M.F.'s "recent overt acts" have evolved over the last few years, and escalated from sending threatening mail to recent physical altercations. While prior incidents consisted of conspiracy letters to the federal government or bank employees, more recent incidents involve physical altercations with his father. Two doctors believed M.F. would be a danger to himself and would be likely to inflict physical injury on those who are unable to avoid contact with him if left untreated. Taking all of the above into consideration, we find the evidence sufficient to support the trial court's finding that M.F. is likely to injure himself or others if released without treatment.

**AFFIRMED.**