# IN THE COURT OF APPEALS OF IOWA

No. 17-1886
Filed August 1, 2018

**IN THE MATTER OF D.B.,**
**Alleged to be Seriously Mentally Impaired,**

**D.B.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, John G. Linn, Judge.

D.B. appeals from the district court's order finding him to be seriously mentally impaired. **AFFIRMED.**

Trent A. Henkelvig of Henkelvig Law, Danville, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

D.B. appeals an involuntary civil commitment order. He contends the State failed to prove he was "seriously mentally impaired."

Iowa Code section 229.1(20) (2017) sets forth the following definition of "seriously mentally impaired":

> (20) "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20).[1] D.B. concedes he has "a long history of paranoid delusions" and a diagnosis of schizophrenia. He also concedes he "was not taking his medication as prescribed." He argues the State failed to prove a likelihood he would "physically injure" himself "or others if allowed to remain at liberty without

---

[1] Recently enacted legislation that went into effect July 1, 2018 amends Iowa Code section 229.1(20) by adding a new paragraph (d). The new paragraph states:
> d. Has a history of lack of compliance with treatment and any of the following apply:
> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
> (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

2018 Iowa Acts ch 1056, § 7.

treatment." In his view, "the record does not clearly" establish this dangerousness element.

"The danger the person[s] pose[] to [themselves] or others must be evidenced by a 'recent overt act, attempt or threat.'" *In re J.P.*, 574 N.W.2d 340, 344 (Iowa 1998) (quoting *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986)). "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988).

Our review is for errors of law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's finding of a serious mental impairment binds us if supported by substantial evidence. *J.P.*, 574 N.W.2d at 342. "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

The district court found: "[D.B.] is likely to physically injure himself or others or likely to inflict severe emotional injury on those unable to avoid contact with [him]." The court's finding is supported by substantial evidence. D.B. has a history of assaultive or threatening conduct. *See In re D.B.*, No. 14-1512, 2015 WL 6087612, at *3 (Iowa Ct. App. Oct. 14, 2015) (citing evidence D.B. struck his mother and threatened his doctors); *In re D.B.*, No. 11-1836, 2013 WL 2145767, at *1 (Iowa Ct. App. May 15, 2013) (noting "paranoid and threatening" behavior). The record in this case evinces the same type of conduct.

A registered nurse filed an application alleging a serious mental impairment. The application asserted D.B. "has been calling our mental health facility & pharmacy several times a day & through the night in a threatening man[ner], demanding Lorazepam & expressing paranoid delusions that neighbors are after him." The application also included an assertion that D.B. "was reported to have been shooting a BB gun at [passers-by] out of his home windows." The application further stated "[m]other reports him being physically violent with her, grabbing her & leaving bruises." An accompanying statement from a physician reiterated,

> Per [D.B.'s] guardian, with whom he lives, he is shooting his BB gun out of the window. He has been physically violent with her when she has encouraged him to get treatment. He has severe paranoid delusions and believes that there is a conspiracy against him with the police and a local church. This has lately caused run-ins with the police and even the mail carrier at his home. Mom does not feel safe to have him in the home currently.

The physician opined D.B.'s condition had "deteriorated" and he was "now a danger to others, and indirectly himself through actions driven by his psychosis."

After the application was filed, a physician evaluated D.B. and filed a report stating "[D.B.] was physically violent towards [his] mother." At the commitment hearing, the physician was asked if D.B. was "going to be a danger to himself or others." He answered:

> Yes . . . . If you look at what happened before he came to the hospital, he was threatening his mother . . . he was shooting a BB gun out of his window, so [D.B.'s] kind of making this kind of gesture . . . to harm other people.

D.B. was removed from the hearing for repeated verbal outbursts and disruptions. He returned to testify in what the district court characterized as a "rambling" fashion. He called out his mother as "cowardly" and suggested the

physician who supported the application together with the prosecutor and judge were in collusion.

We conclude the district court did not err in finding D.B. had a serious mental impairment.  We affirm the civil commitment order.

**AFFIRMED.**