# IN THE COURT OF APPEALS OF IOWA

No. 22-1061
Filed January 25, 2023

**IN THE MATTER OF T.B., ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,**

**T.B.,**
  Respondent-Appellant.
_____

  Appeal from the Iowa District Court for Woodbury County, Brian E. Buckmeier, Magistrate.

  The respondent appeals from a court order requiring he receive inpatient treatment and submit to injectable medications. **AFFIRMED.**

  Debra S. De Jong, Orange City, for appellant.

  Brenna Bird, Attorney General, and Chandlor Collins (until withdrawal) and Sarah A. Jennings, Assistant Attorneys General, for appellee State.

  Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**PER CURIAM.**

The respondent, who has a lengthy history of court involvement related to schizoaffective disorder and schizophrenia, appeals from a court order requiring he receive inpatient treatment and submit to injectable medications pursuant to Iowa Code Chapter 229 (2022).  The respondent experiences paranoid delusions and has shown some escalating aggressive behaviors.  Based largely on evidence contained in reports from two physicians, one of which was commissioned at the respondent's request, we affirm.

## I.      Background Facts and Course of Proceedings

The court file detailing the respondent's mental-health struggles is lengthy and we need not detail it here, except to note that he has been subject to continuing commitment in two Iowa counties.

This appeal concerns a June 9, 2022 order requiring the respondent to submit to injectable medications.  The basis of the court's order was evidence from two physicians and a report from the facility where the respondent previously received treatment.

The first physician's report opined that the respondent was mentally ill with diagnoses of schizoaffective disorder, bipolar type with paranoia and delusions, and post-traumatic stress disorder.  The first-opinion physician opined that the respondent lacked sufficient judgment to make responsible decisions because he "has no insight into his mental illness and need for treatment."  This physician also opined the respondent was a danger to himself or others due to his paranoid delusions, refusal to take medication, and belief "he is being poisoned . . . [and] has been shot in the head," when that was confirmed to be false.

The second physician's report was a "second opinion" requested by the respondent. The second-opinion physician opined that the respondent was mentally ill and experienced acute psychosis with fixed delusions, "consistent with prior diagnoses of schizoaffective disorder and schizophrenia." This physician further opined that the respondent lacked sufficient judgment to make responsible decisions and that the risk of violence against "multiple people in his environment," such as "family, healthcare workers, and an unspecified judge," is "high." Last, the second-opinion physician opined that the respondent was a danger to himself or others and identified the respondent's "belief he is being poisoned and under threat by multiple people in his environment" as evidence of present dangerousness.

The facility's periodic report indicated the respondent continued to demonstrate psychotic behaviors and refused to take prescribed medications. The facility reported that the respondent's mental health was deteriorating as a result, manifesting in part through delusions about his identity, being shot in the head, and government surveillance. The facility also reported escalating aggressive behavior, including following staff out to their vehicles, threatening to send staff "to jail for murder," and likely destroying property (kicking in a door).

At the hearing, the respondent denied that his legal name belonged to him and claimed he did not know his name. He reported being kidnapped by the persons who were in fact his biological parents. He also testified that the facility filed a report indicating he was being aggressive because "they drugged [his] coffee" and he had been "irritated with them for lying to [him] about [his] name." He testified that he was "not willing to take medicine."

The district court ordered that the respondent submit to injectable medication if he did not comply voluntarily. This appeal followed.

## II.    Standard of Review

A commitment under Chapter 229 must be supported by clear and convincing evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Our review on appeal is for correction of errors at law, and findings of fact are binding on us if they are supported by substantial evidence. *Id.*

## III.    Discussion

A person may be civilly committed under Chapter 229 when the person is "seriously mentally impaired" or has "serious mental impairment." Iowa Code §§ 229.1(20), .6. "Seriously mentally impaired" is a term of art with three elements: (1) mental illness; (2) that causes a lack of sufficient judgment to make responsible decisions regarding the person's hospitalization; and (3) the person shows any of multiple additional criteria. *Id.* § 229.1(20). This third element can be met by establishing the person is likely to "physically injure the person's self or others" or "inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness" if such person remains at liberty and untreated. *Id.* § 229.1(20)(a), (b).

There is no real debate between the State and the respondent, or any real question on this record, that the respondent is mentally ill as to satisfy the first element. Both physicians opined as to schizoaffective disorder or schizophrenia. These conditions are a "mental disease" or "mental disorder." *See id.* § 229.1(11) (with exceptions not applicable here, defining "mental illness" to include "every type of mental disease or mental disorder").

The record also clearly demonstrates the second element: a lack of sufficient judgment to make decisions about hospitalizations. Again, both physicians agree on this point, and the respondent has not offered any evidence to the contrary. We also note that the first physician's observation that the respondent "has no insight into his mental illness and need for treatment" is consistent with the balance of the record evidence and is, in our view, an apt summary.

The fighting issue in this appeal is over the third element, dangerousness to self or others. The respondent argues that he has yet to threaten to kill or physically harm anyone, only yelled at them and threatened to sue them. The State replies that the respondent is engaged in escalating behavior and that the statute requires less than a "specific incident of violence," only a "likelihood he may inflict [such an] injury." We agree with the State on the particular facts of this case.

The dangerousness inquiry requires us to "make a predictive judgment about whether the respondent poses a danger to himself or others." *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988). Under supreme court case law, this judgment must be based at least in part on "a 'recent overt act, attempt or threat.'" *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (quoting *Stamus v. Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976)). Paranoia and delusions are relevant considerations to this analysis. *See In re B.B.*, 826 N.W.2d 425, 433 (Iowa 2013); *Mohr*, 383 N.W.2d at 542.

We find the record contains substantial evidence of dangerousness. While we encourage physicians to include more supporting facts in their reports than what we find in this record, this is not a case where the physicians' reports lack

any facts or discussion to support their opinions as to dangerousness. *See In re L.E.B.*, No. 14–0989, 2015 WL 7575399, at *4 (Iowa Ct. App. Nov. 25, 2015) (finding the evidence insufficient to support commitment when the physician checked the "yes" box for dangerousness but offered no supporting information). The second-opinion physician specifically opined as to a "high" risk of danger to persons in the respondent's environment, such as "family, healthcare workers, and an unspecified judge." The second-opinion physician also specifically linked this danger to the respondent's "well elaborated, fixed delusions involving multiple people in his environment" and "perceived threats" from these people, such as the belief that he was "being poisoned and under threat." The first-opinion physician similarly cited delusions to support his opinion as to dangerousness. These opinions give context to the respondent's most recent overt act, one week before the June 9, 2022 order was entered: the respondent approached the vehicle of a facility employee, accused her of malfeasance in a raised voice, walked away, and then approached the vehicle again. The employee felt so threatened by the respondent's conduct and demeanor that she called 911. This behavior, contextualized by the physician's reports, is sufficient to sustain the district court's order. The order for commitment is supported by substantial evidence.

**AFFIRMED.**