# IN THE COURT OF APPEALS OF IOWA

No. 16-0951
Filed October 26, 2016

**IN THE MATTER OF B.L.,**
**Alleged to Be Seriously Mentally Impaired,**

**B.L.,**
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

     Appellant challenges an involuntary hospitalization order issued pursuant to Iowa Code chapter 229 (2015). **REVERSED AND REMANDED.**

     Nina M. Forcier, Waterloo, for appellant.

     Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

     Considered by Vogel, P.J., McDonald, J., and Blane, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, Judge.**

B.L. appeals from an involuntary hospitalization order issued pursuant to Iowa Code chapter 229 (2015), contending there is not clear and convincing evidence he is "seriously mentally impaired" as defined in Iowa Code section 229.1(17).

"An involuntary commitment proceeding is a special action triable to the court as an ordinary action at law." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Therefore, our review is for correction of errors at law. *See id.* A determination someone is seriously mentally impaired must be supported by clear and convincing evidence. *See* Iowa Code § 229.12(3); *In re Oseing*, 296 N.W.2d 797, 799 (Iowa 1980). Evidence is clear and convincing when there is "no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). The clear-and-convincing standard is less onerous than proof beyond a reasonable doubt, but more so than a preponderance of the evidence. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's findings of fact are binding on appeal if they are supported by substantial evidence. *See J.P.*, 574 N.W.2d at 342. Evidence is substantial if a reasonable trier of fact would accept it as adequate to reach a conclusion. *See In re Foster*, 426 N.W.2d 374, 376 (Iowa 1988).

Chapter 229 authorizes involuntary civil commitment for a person who is "seriously mentally impaired." A person is "seriously mentally impaired" or possesses a "serious mental impairment" when the person:

> [L]acks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20). This definition has three elements: (1) the person must be afflicted with a mental illness; (2) the person lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment; and (3) the person is likely, if allowed to remain at liberty, to inflict physical injury on the "person's self or others," to inflict emotional injury on the statutorily-designated class of persons, or to suffer physical injury, physical debilitation, or death due to the inability of the person to satisfy the person's needs. *See* Iowa Code § 229.1(20); *Foster*, 426 N.W.2d at 376–77. The term "likely" means "probable or reasonably to be expected." *Foster*, 426 N.W.2d at 377 (citation omitted). The third element is commonly referred to as the endangerment element. *See J.P.*, 574 N.W.2d at 344.

Because civil commitment results in a deprivation of liberty, the constitution requires the State to establish dangerousness as a prerequisite to involuntary hospitalization. *See O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975) (stating there is "no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom"). Although the civil commitment statute does not explicitly require such proof, our

courts have required dangerousness to be established by a recent, overt act, attempt, or threat. *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). An overt act in the context of physical injury "connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *Id.* 426 N.W.2d at 378.

B.L.'s father initiated this commitment proceeding after the father became concerned regarding B.L.'s behavior. For several weeks prior to the commencement of this proceeding, B.L. had been having delusions. B.L. contended he owned a company he used to work for, went to the company's offices, and demanded information. B.L. told his father that he had people to fire. B.L. also stated he had twenty children. B.L. believed he was an extremely rich property owner. B.L. also expressed belief that his neighbor or neighbors was/were stealing dirt from underneath B.L.'s home. Finally, B.L. also stated his belief that he was a federal agent and carried a badge and weapon. None of these beliefs were true.

Despite B.L.'s delusional behaviors, there was not clear and convincing evidence B.L. likely was a danger to himself or others if allowed to remain at liberty as evidenced by a recent, overt act. "Stringent proof under the dangerousness standard is necessary because predicting dangerousness is difficult and, at best, speculative." *Id.* at 377–78. Here, the treating physician testified B.L. was "never aggressive," "just delusional." The physician testified B.L. would not harm himself and was "capable of taking care of his everyday needs." The physician testified B.L. was "very polite" when he refused medication. The doctor opined it was possible that B.L. might get into an

altercation if someone confronted him if he remained at liberty. However, on cross-examination, the doctor admitted B.L. has not made any threats and there was no violence involving B.L. The father testified B.L. made threats to fire people but did not make any threats to hurt people. The father also testified B.L. was calm when making these statements. More than anything, the father testified, B.L.'s behavior was worrisome. Abnormal behavior in absence of evidence establishing dangerousness is not enough to meet the constitutional and statutory standard. *See id.* at 378–79. ("We reject the applicant's argument that the overt act itself need not necessarily involve a threat or an act of unprovoked physical aggression on the part of the respondent. Such an approach would tend to increase the incidence of error in predicting dangerousness, thus compounding the problem of uncertainty in this area.").

The cases upon which the State relies are readily distinguishable. In *In re D.A.S.*, No. 13-0168, 2014 WL 1714379, at *3 (Iowa Ct. App. Apr. 30, 2014), the respondent had made threats, peered in people's windows while wearing a ski mask, and was uncooperative with police. There was also testimony establishing a risk of future conflict with police based on the respondent's recent behavior. In *In re F.W.S.*, No. 09-1110, 2009 WL 4842828, at *2 (Iowa Ct. App. Dec. 17, 2009), the respondent had "a past history of aggression and violent behavior," including multiple arrests and an incident in which the respondent attempted to enter the White House without authorization and was deemed a threat to the President by the United States Secret Service. There is no similar history of violence or recent, overt act in this case. "The existence of a mental illness, by itself, does not establish grounds for commitment." *J.P.*, 574 N.W.2d at 343.

For the foregoing reasons, we conclude there is not clear and convincing evidence establishing B.L. poses a probable risk of danger to himself or others as evidenced by a recent, overt act. We reverse the district court's involuntary commitment order and remand this case to the district court with directions to terminate B.L.'s commitment.

**REVERSED AND REMANDED.**