# IN THE COURT OF APPEALS OF IOWA

No. 16-0678
Filed January 25, 2017

**IN THE MATTER OF G.G.,**
**Alleged to Be Seriously Mentally Impaired,**

**G.G.,**
   Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Heather L. Lauber, District Associate Judge.

G.G. appeals the district court's order of involuntary commitment under Iowa Code chapter 229 (2016). **AFFIRMED.**

Alexander D. Smith of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

G.G. contests the finding he suffers from a serious mental impairment. G.G. does not dispute that he has a mental illness or that he would be a threat to himself or others if allowed to remain at liberty without treatment. He challenges only the sufficiency of the State's evidence he lacked sufficient judgmental capacity to make responsible decisions with respect to his hospitalization and treatment. Because we find ample evidence in the record establishing G.G.'s lack of judgmental capacity, we affirm.

## I.      Facts and Prior Proceedings

A social worker filed an application on March 21, 2016, alleging G.G., who is a veteran, was suffering from serious mental impairment. G.G. was experiencing suicidal ideation and had expressed a specific plan to end his life. A board-certified psychiatrist with the Veterans Affairs Central Iowa Health Care System filed an affidavit describing G.G.'s chronic paranoid schizophrenia and G.G.'s frustration with being on psychiatric medications and living in a residential-care facility. She continued:

> [G.G.] expressed his belief that any psychiatric symptoms he has ever had have been caused by taking psychotropic medications and cannot be convinced otherwise. Given that he has a history of serious suicide attempts, RCF [residential-care-facility] staff were understandably quite concerned when he made . . . threats [to end his life].

The doctor also opined G.G. was not capable of making responsible decisions with respect to his hospitalization and treatment, reasoning: "[G.G.] does not believe he has a mental illness. He believes that he 'hoodwinked' the government into thinking he had a mental illness and is now unjustifiably

receiving psychotropic medications and government money that he does not deserve."

G.G.'s court-appointed counsel entered an appearance on March 23, and the matter proceeded to a hearing before a district associate judge (DAJ) on March 25. The psychiatrist who filed the affidavit testified via telephone at the hearing. She stated that when G.G. failed to take his medications, he became "very delusional. . . . He often [became] very negative about himself and frequently [became] suicidal and has attempted suicide in the past." On cross-examination, G.G.'s attorney asked the doctor about the side effects of G.G.'s medications. The doctor responded that G.G. initially told her he was tolerating the medications well but later claimed "they stifle his thinking and his mind." G.G. did not testify at the hearing.

The DAJ found G.G. to be seriously mentally impaired and committed him on an inpatient basis. G.G. appealed the DAJ's order, and the district court held a de novo trial. The district judge issued an order affirming the DAJ's finding, and G.G. again appealed.

After reviewing the procedural history in this matter, we requested supplemental briefing on a jurisdictional question: whether the district court's appellate jurisdiction includes review of a DAJ's finding of serious mental impairment. After considering Iowa Code sections 229.21(3) and 602.6306(2) (2016), we concluded the district judge did not have jurisdiction to consider the merits of G.G.'s appeal and the district judge's decision was void. *See In re L.H.*, ___ N.W.2d ___, ___, 2016 WL 7404593, at *3–4 (Iowa Ct. App. 2016) (explaining this analysis in the context of a DAJ's order continuing placement).

But we determined a challenge to the DAJ's ruling was properly before us. We ordered the parties to submit amended briefs addressing the DAJ's ruling and now consider the merits of the parties' arguments.

## II. Scope and Standard of Review

We review challenges to the sufficiency of the evidence in involuntary-commitment proceedings under chapter 229 for correction of legal error. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "The allegations made in the application for involuntary commitment must be supported by clear and convincing evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). We consider evidence "clear and convincing" when there is "no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *See id.* (citation omitted).

## III. Analysis

Chapter 229 authorizes involuntary civil commitment if a person is "seriously mentally impaired." *See* Iowa Code § 229.13(1). The statutory definition of serious mental impairment includes three elements; the person must: (1) have a mental illness, (2) lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment" as a result of the mental illness, and (3) be likely, if allowed to remain at liberty, to be a danger to the person's self or others. *See id.* § 229.1(20).

On appeal, G.G. challenges only the sufficiency of the State's proof of the lack-of-judgment element. To prove lack of judgment, the State must demonstrate G.G. "is unable because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or

not." *See In re B.T.G.*, 784 N.W.2d 792, 797 (Iowa Ct. App. 2010); *see also J.P.*, 574 N.W.2d at 343 (noting mental illness "does not preclude an individual's ability to make rational judgments in all cases or with respect to all matters" (quoting Randall P. Bezanson, *Involuntary Treatment of the Mentally Ill in Iowa: The 1975 Legislation*, 61 Iowa L. Rev. 262, 275 n.68 (1975))). We focus on the reasoning for the treatment decision, not the decision itself. *See J.P.*, 574 N.W.2d at 343. "A decision, although medically inadvisable, may be rationally reached, and if so, it is not the court's place to second guess the decision." *Id.*

G.G. argues the State failed to prove he lacked judgmental capacity because although he refused his medications, his refusal stemmed from his concern about their side effects. The State contends it satisfied its burden because G.G.'s decision to refuse medication was not "rationally reached."

We find substantial evidence in the record to support the DAJ's decision G.G. lacked sufficient judgmental capacity. Concern about a side effect of a medication may be a rational reason for declining that medication. *See id.* at 343. But G.G.'s complaint his medications "stifled" his thinking—in and of itself—does not require a finding G.G. had the capacity to make rational decisions about his treatment.

According to his psychiatrist, G.G. did not believe he had a mental illness or needed to take his prescribed medications. In addition, G.G. believed his psychotropic medication caused his delusions. In reality, G.G. had a diagnosis of chronic paranoid schizophrenia, and without his medications, G.G. often became paranoid and suicidal, according to the psychiatrist. The facts as a whole demonstrate G.G. lacked judgmental capacity regarding his treatment and

hospitalization. *See, e.g.*, *In re F.W.S.*, No. 09-1110, 2009 WL 4842828, at *1 (Iowa Ct. App. Dec. 17, 2009) (finding lack of judgment when respondent denied he had a mental illness and became paranoid and delusional when respondent refused medication); *In re J.D.H.*, No. 00-820, 2001 WL 355652, at *1 (Iowa Ct. App. Apr. 11, 2001) (finding lack of judgment when respondent refused to take his medications "because they made him tired" and did not like the way his doctor treated him).

Moreover, this case is readily distinguishable from *J.P.*, 574 N.W.2d at 343–44, the case G.G. principally relies upon in support of his argument. In *J.P.*, the State presented "virtually no evidence" to show the respondent lacked sufficient judgment to make responsible decisions about her treatment, and our supreme court rejected the State's argument the respondent's decision not to take her medication indicated lack of judgment. 574 N.W.2d at 343. J.P. had an educational background in psychology and counseling, articulated specific concerns about the side effects of her new medication, and preferred psychotherapy to chemotherapy. *Id.* The record before us is markedly different. According to G.G.'s psychiatrist, he believed the symptoms of his mental illness were caused by his psychotropic medications.

Accordingly, we affirm the commitment order.

**AFFIRMED.**