# IN THE COURT OF APPEALS OF IOWA

No. 18-1868
Filed November 27, 2019

**IN THE MATTER OF E.R.,**
**Alleged to Be Seriously Mentally Impaired,**

**E.R.,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Samantha Gronewald,
Judge.


　　The respondent appeals the district court decision finding she was seriously
mentally impaired. **AFFIRMED.**


　　Alexander Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &
Bergmann L.L.P., Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant
Attorney General, for appellee State.


　　Considered by Vaitheswaran, P.J., Mullins, J., and Danilson, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

E.R. appeals the district court decision finding she was seriously mentally impaired. E.R. has not shown she received ineffective assistance due to counsel's failure to challenge the qualifications of a person signing a physician's report. We find there is sufficient evidence to show E.R. was not capable of making responsible decisions about her treatment. We affirm the decision of the district court.

## I.     Background Facts & Proceedings

E.R. lived with her father in Urbandale. She claimed her father and other family members were causing her intense pain by aiming lasers, garage door openers, television remotes, and other electronic devices at her. On August 30 and 31, 2018, she hit her father.[1] The father called the police, and E.R. got into an altercation with one of the officers. The next day, after E.R. was released from jail, she was homeless because there was a no-contact order prohibiting her from returning to her father's home. The father and a sibling filed applications alleging E.R. was seriously mentally impaired.

A physician's report was prepared by Dr. Ahmar Butt on September 16, finding E.R. was suffering from "psychosis unspecified." E.R. told Dr. Butt her father and police officers were using her as a Wi-Fi booster and she had been subjected to electromagnetic attacks. Dr. Butt found E.R. was likely to physically injure herself or others due to her delusions and her recent physical altercation

---

[1] E.R. has pending domestic abuse assault charges because of these incidents.

with her father. While hospitalized, E.R. refused all medication. A magistrate found E.R. was seriously mentally impaired and she appealed that decision.

On October 3, a new physician's report was prepared by Susan Latcham, a licensed advanced registered nurse practitioner (ARNP). Latcham found E.R. was mentally ill with bipolar disorder and delusions. She stated E.R. was not capable of making responsible decisions about treatment because she continued to refuse medication. Latcham found E.R. was a danger to herself or others because she believed her family was plotting against her and she would not accept assistance for her mental-health condition. Dr. Butt's report from September 16 was attached to Latcham's report.

On the basis of E.R.'s appeal, a trial de novo was held on October 4 before the district court. Latcham testified she had been working in the mental-health field for approximately four years. She testified concerning her report. On questioning about recent overt acts or threats, Latcham stated, "She had an altercation with her father, which she had—her father pressed charges. There were some physical contact, I believe, involving the situation that he placed the court order on her." Latcham testified E.R. needed inpatient treatment. She stated E.R. initially exhibited some aggressive behaviors while in psychiatric care.

E.R. testified she did not suffer from a mental illness and did not need any treatment. She stated the prescribed medications undermined her mental health and her physical health. E.R. stated the medication caused severe migraines and "I definitely felt a cognitive decline and general drowsiness and a sort of burning, some of the unusual and rare side effects which I reported but were not addressed." E.R. testified she had a metal plate in her knee and this made her

"very sensitive to electromagnetic environments at times." E.R. asked to be released from inpatient treatment.

The district court found E.R. was mentally ill, as she was "suffering with a delusional disorder and has a history of bipolar disorder." The court also found E.R. could be treated with medication. The court additionally found E.R. "has continued to demonstrate lack of insight regarding her mental illness." The court determined E.R. (1) was likely to physically injure herself or others; (2) was likely to inflict serious emotional injury on family members, and (3) was incapable of satisfying her physical needs. The court noted E.R.'s recent assault of her father, her homelessness, and her poor judgment. E.R. was ordered to cooperate with treatment. She appealed the district court's decision.

## II. Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1) (2018). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340,

342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

### III. Merits

In order to be considered seriously mentally impaired under section 229.1(20), there must be clear and convincing evidence the respondent (1) has a mental illness; (2) lacks "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) is likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on those close to the person, or to be unable to satisfy the person's physical needs. *Id.* at 343 (quoting *In re Foster*, 426 N.W.2d 374, 376–77 (Iowa 1988)). Section 229.1(20) now also includes a fourth category, "a lack of compliance with treatment."[2] *See* 2018 Iowa Acts ch. 1056, § 6, 7.

---

[2] Section 229.1(20) provides:

"Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

d. Has a history of lack of compliance with treatment and any of the following apply:

(1) Lack of compliance has been a significant factor in the need for emergency hospitalization.

(2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

**A.** E.R. claims there is not clear and convincing evidence to show she has a mental illness because Latcham, as an ARNP, might not have been qualified to give an opinion on the matter.[3] Section 229.10(2) requires a report by a physician or mental-health professional. The term "mental health professional" is defined in section 228.1(7). *See* Iowa Code § 229.1(10). An ARNP may be considered a mental-health professional if they meet certain requirements. *See id.* § 228.1(7). On the report, Latcham signed as a "qualified mental health professional."

E.R. did not raise the issue of Latcham's qualifications at the hearing and no evidence was presented as to whether Latcham met the qualifications in section 228.1(7). We conclude the issue has not been preserved for our review. *See In re S.M.*, No. 12-1983, 2014 WL 69773, at *1 (Iowa Ct. App. Jan. 9, 2014) (finding the respondent, who was alleged to be seriously mentally impaired, had not preserved error on issues that had not been raised before the district court).

In the alternative, E.R. raises the issue through a claim of ineffective assistance of counsel—stating counsel was ineffective for failing to challenge whether Latcham was a mental-health professional under the provisions in section 228.1(7).[4] "To establish a claim of ineffective assistance of counsel, a claimant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the claimant a fair trial." *In re B.T.G.*, 784 N.W.2d

---

[3] In her appellate brief, E.R. acknowledges, "it may very well be the case that [Latcham] is a mental health professional under the Iowa Code."

[4] E.R. also asserts she was not required to make an objection because the issue goes to the sufficiency of the evidence and the matter was tried to the court. We determine the preservation of error was necessary. *See S.M.*, 2014 WL 69773, at *1.

792, 798 (Iowa Ct. App. 2010). "A claimant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance." *Id.*

On a claim of ineffective assistance, E.R. has the burden to show she was prejudiced by counsel's failure to question Latcham's qualifications. *See State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019). She must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* (citation omitted). E.R. does not question the qualifications of Dr. Butt. His report was attached to Latcham's report and largely came to the same conclusions. We determine E.R. has not shown the result of the proceedings would have been different if counsel had questioned Latcham's qualifications, and we conclude she was not prejudiced by counsel's performance. We add that even if Latcham was not qualified to admit her written report, E.R. does not challenge Latcham's testimony of her personal observations of E.R. during her hospitalization.

**B.** E.R. asserts the State did not present sufficient evidence to show she lacked sufficient judgment to make responsible decisions with respect to her treatment. *See* Iowa Code § 229.1(20). She states she had a rational reason for refusing to take medication. E.R. testified the medications undermined her mental and physical health and caused side effects of a cognitive decline, general drowsiness, and a sort of burning.

In discussing this element, the Iowa Supreme Court has stated:

In determining whether a decision is responsible, the focus must be on whether the grounds for the decision are rational or reasonable not what conclusion is reached. A decision, although medically inadvisable, may be rationally reached, and if so, it is not the court's place to second guess the decision.

*J.P.*, 574 N.W.2d at 343. We are not convinced it is reasonable to refuse medications even with such side effects where the medications are intended to alleviate combative and assaultive conduct.

In addition to her concerns about the side effects of the medications prescribed to her, E.R. denied having a mental illness or needing any type of treatment. She testified, "I don't believe I need antipsychotics. This is why I've asked to be taken off of them." Dr. Butt gave the opinion E.R. was not capable of making responsible decisions, noting she was "noncompliant in the hospital, with poor insight and judgment," as well as her belief she was a victim of electromagnetic attacks. Latcham also stated E.R. "continued to demonstrate lack of insight regarding her mental illness." We determine there was substantial evidence in the record to support the district court's finding E.R. lacked sufficient judgment to make responsible decisions with respect to her treatment. *See id.* at 340 (stating the district court's factual findings are binding on appeal if they are supported by substantial evidence).

**C.** E.R. has not specifically addressed a claim on the third element other than her claim of insufficiency of the evidence. The third element requires a showing she is likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on those close to the person, or to be unable to satisfy her physical needs. *See id.* at 343. It could also be satisifed by a showing of a lack of compliance with treatment. Iowa Code § 229.1(20). The evidence showed E.R. physically attacked her father, had an

altercation with a police officer, and exhibited some aggressive behaviors while in psychiatric care.  The evidence was sufficient to meet the third element.

We affirm the district court's decision finding E.R. was seriously mentally impaired.

**AFFIRMED.**