# IN THE COURT OF APPEALS OF IOWA

No. 22-0363
Filed November 2, 2022

**IN THE MATTER OF P.K.,
ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,**

**P.K.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, Ty Rogers, District Associate Judge.

The respondent appeals the district court decision finding he continued to be seriously mentally impaired. **AFFIRMED.**

Kimberly A. Auge of The Auge Law Firm, Fort Madison, for appellant.

Thomas J. Miller, Attorney General, and Chandlor Collins, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

The respondent, P.K., appeals the district court decision finding he continued to be seriously mentally impaired. P.K. conceded that he had a mental illness. P.K. asserts that he has sufficient judgment to make responsible decisions on treatment. He also asserts that the evidence does not show that if he were allowed to remain at liberty, he would be likely to inflict injury on himself or others. We find the court's decision is supported by substantial evidence and P.K. is seriously mentally impaired.

## I. Background Facts & Proceedings

P.K. is an inmate with the Iowa Department of Corrections (Department) who has been diagnosed with post-traumatic stress disorder and schizoaffective disorder, depressive type. In 2019, he was determined to be seriously mentally impaired. At that time he was very unpredictable, continually broke the rules, and was not taking medication. We affirmed the district court's decision finding P.K. was seriously mentally impaired. *In re P.K.*, No. 19-0567, 2020 WL 824170, at *5 (Iowa Ct. App. Feb. 19, 2020). P.K. remained under psychiatric treatment with the Department.

On May 7, 2021, P.K. requested a review or dismissal of his case, claiming he no longer met the criteria under Iowa Code chapter 229 (2021) for adjudication as being seriously mentally impaired. A periodic report dated May 26 by Misti Deutschle, a staff psychiatrist nurse practitioner, found P.K. "is seriously mentally impaired and in need of treatment, but can continue in outpatient treatment." Deutschle reported:

[P.K.] was last seen April 1, 2021, and had just received his monthly injection. He has moved into a level of having more privileges. No further delusions, hallucinations, or disciplinary reports. He states he is doing well and again asks to have the injection discontinued. I did discontinue the medications and on a May 7, 2021 follow-up with psychology, he continued to report doing well. I continue to recommend civil commitment for [P.K.] to ensure that we can intervene if necessary, and force medications to preserve his function. This is because he shows little insight into when his decompensations occur, and he is unable to improve on his own without medications, which he did not take when very symptomatic. He is having no symptoms but this is also his first month without the scheduled medications.

In a report from June 23, Deutschle reported that since discontinuing medication, P.K. punched another inmate and was found guilty of assault and obstructive/disruptive conduct. P.K. told Deutschle the assault "had nothing to do with his psychiatric well-being," but was due to the conduct of the other inmate. Deutschle continued to recommend civil commitment for P.K.

P.K.'s request for review or dismissal was set for a hearing on June 24. On that date, P.K. refused to participate in the proceeding. The court stated, "[P.K.] was informed refusal to participate would lead to denial of his request and he informed the prison official he understood and refused to participate." The court ruled that the prior order for outpatient commitment was confirmed. The court found P.K. remained seriously mentally impaired and in need of treatment.

On October 4, Deutschle reported:

Since [August 3, 2021], [P.K.] has refused to be seen for his psychiatric med management appointments and has had disciplinary reports for being out of place of assignment and refusing directives. On September 14, 2021 he threatened to kill the unit manager and his injection was restarted at this time, he has attempted to refuse it.

She stated P.K. was seriously mentally impaired and needed to remain in civil commitment. The court determined P.K. continued to be seriously mentally impaired.

Deutschle reported on December 27:

I met with [P.K.] on October 5, 2021. This appointment was ended abruptly after he began screaming at me for restarting his injection, accused me of laughing at him, and was verbally abusive, repeatedly calling me derogatory names. He demanded that I help him get this civil commitment dropped.

She noted that P.K. refused to leave his cell for appointments and meetings, including his psychiatric appointments. P.K. told Deutschle the milk was tainted "and it was leaking stuff out of it." He also referred to his medication as "poison." Deutschle again recommended that P.K. remain in civil commitment. The court found P.K.'s condition remained unchanged—he was seriously mentally impaired and in need of treatment.

On January 10, 2022, P.K. requested a review of his civil commitment case. Deutschle's report from January 25 stated that at P.K.'s request his medication was decreased. She continued to recommend civil commitment.

A review hearing was held on February 5. Deutschle testified that when P.K.'s medication was decreased he began having more behavioral problems. Deutschle pointed out that P.K. did very well while he was on medication. She was questioned:

Q. Do you believe he'd be a danger to himself or others if there was not an outpatient treatment and committal in place? A. I do. Just since he's been off this time he's threatened to kill the unit manager. He was very threatening towards myself. I mean, he's threatened to kill several staff members. He has physically—he has had physical altercations with staff members as long as—or as well as other inmates. And again, that was when he was unmedicated.

Deutschle stated that P.K. had no interest in voluntarily taking any medications for his mental-health problems.

P.K. agreed with the diagnosis of post-traumatic stress disorder but disputed that he had schizoaffective disorder, depressive type. He stated that his altercation with another inmate was not due to his mental health but was due to the conduct of the other inmate. P.K. denied making threatening statements to staff members. He stated that he called Deutschle a disrespectful name but asserted that it was because she laughed at him. He claimed that he could be successful without medication.

The court issued a decision on February 15, finding "the State has met its burden and established by clear and convincing evidence that [P.K.] continues to be seriously mentally ill within the scope and meaning of Iowa Code Chapter 229." The court noted Deutschle testified P.K. "ha[d] poor insight into the severity of his mental health condition and the need to treat his condition with medications." The court found, "When he takes such medications his negative behaviors subside, when he stops the medications, the paranoia, delusional thinking, aggression, and threatening behaviors start again." The court also found, "This violence and aggression when not stabilized on medication establishes [P.K.] as a danger to others if left at liberty without court required treatment." P.K. appeals the court's decision.

## II.     Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826

N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1) (2022). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

### III.     Discussion

P.K. contends the district court erred by finding that he remained seriously mentally impaired. He admits that he suffers from post-traumatic stress disorder, which is a serious mental illness. He disagrees with a diagnosis of schizoaffective disorder, depressive type. P.K. asserts that he has sufficient judgment to make responsible decisions in regard to treatment. He also asserts that the evidence does not show that if he were allowed to remain at liberty, he would be likely to inflict injury on himself or others.

In order to be considered seriously mentally impaired under section 229.1(20),[1] there must be clear and convincing evidence a person (1) has a mental illness; (2) lacks "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) is "likely, if allowed to remain at liberty, to inflict physical injury on 'the person's self or others,' to inflict serious emotional injury on those close to the person, be unable to satisfy the person's physical needs," or have "a lack of compliance with treatment."

    **A.** P.K. does not dispute the first element, that he has a mental illness.[2] He claims the evidence does not support a finding regarding the second element—

---

[1] Iowa Code section 229.1(20) provides:

    "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

    a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

    b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

    c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

    d. Has a history of lack of compliance with treatment and any of the following apply:

        (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.

        (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

[2] He disputes the diagnosis of schizoaffective disorder, depressive type, but concedes that he suffers from post-traumatic stress disorder, which is a mental illness.

that he lacks sufficient judgment to make responsible decisions with regard to hospitalization or treatment. *See* Iowa Code § 229.1(20).

"To establish the lack of judgmental capacity, the State must 'prove that the person is unable because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not.'" *In re L.J.*, No. 13-0116, 2013 WL 5498116, at *3 (Iowa Ct. App. Oct. 2, 2013) (quoting *In re Mohr*, 383 N.W.2d 539, 541 (Iowa 1986)). "In the context of a review of continued commitment, we believe this element entails whether the person is unable to make a rational decision that his or her treatment continue or not." *In re B.T.G.*, 784 N.W.2d 792, 797 (Iowa Ct. App. 2010).

P.K.'s condition deteriorated when he was no longer taking medication. He punched another inmate. He refused to attend a review hearing in June 2021. Additionally, he refused to be seen for his psychiatric appointments. P.K. had disciplinary reports for being out of place of assignment and refusing directives. He threatened to kill the unit manager. Despite these problems when he was not on his medication, P.K. testified he would no longer take medication for his mental condition absent the civil commitment order. Deutschle also testified P.K. expressed to her that he wanted to discontinue the medication.

The court found P.K. "ha[d] poor insight into the severity of his mental health condition and the need to treat his condition with medications." We determine there is substantial evidence in the record to support the court's conclusion that P.K. lacked the judgment to make responsible decisions regarding his hospitalization or treatment. *See J.P.*, 574 N.W.2d at 342 (stating the district

court's factual findings are binding on appeal if they are supported by substantial evidence).

**B.** P.K. also challenges the court's findings on the third element—whether if he remained at liberty, he was likely to inflict physical injury on himself or others, or to inflict serious emotional injury on those who lacked a reasonable opportunity to avoid contact with him. *See* Iowa Code § 229.1(20)(a), (b).

The third element "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Mohr*, 383 N.W.2d at 542 (citation omitted). The term "likely" in section 229.1(20) is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) (citation omitted).

The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *Mohr*, 383 N.W.2d at 542 (citation omitted). "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that it is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). Threats have been held to be sufficient indicia to support commitments. *B.B.*, 826 N.W.2d at 433.

On this element, the district court found:

> The Respondent is likely to physically injure others if left at liberty without treatment. Ms. Deutschle testified it is her opinion the defendant would immediately stop taking medication if left at liberty without Court required treatment. Past patterns have established when he stops taking medications, his paranoia, delusional thinking, aggression, and threatening behaviors start again. The Respondent, after stopping medication for a period of time but before the re-started medication could take proper effect; assaulted another prisoner and threatened to kill a unit manager. He additionally was

threatening toward Ms. Deutschle. This violence and aggression when not stabilized on medication establishes the Respondent as a danger to others if left at liberty without court required treatment.

The court's findings are supported by substantial evidence. When P.K. was not properly medicated, he punched another inmate and threatened to kill a unit manager. He also screamed at Deutschle and referred to his medication as "poison." The finding that P.K. was likely to injure himself or others was supported by evidence of a "recent overt act, attempt or threat." *See Mohr*, 383 N.W.2d at 542.

We affirm the court's decision finding P.K. was seriously mentally impaired.

**AFFIRMED.**