# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0385
Filed May 13, 2026

————————————

**In the Matter of J.K., Alleged to be Seriously Mentally Impaired**

**J.K.,**
Respondent-Appellant,

————————————

Appeal from the Iowa District Court for Dubuque County,
The Honorable Thomas A. Bitter, Judge.

————————————

**AFFIRMED**

————————————

Chris Raker, East Dubuque, Illinois, attorney for appellant.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

J.K. was diagnosed with schizoaffective disorder several years ago and has lived in a group home. After becoming his own guardian and payee, he stopped taking his psychiatric medication, and his behavior markedly declined. Staff at the group home witnessed him experiencing auditory hallucinations, and he began looking for "bugs" that he claimed were listening to him. He became aggressive and threatened to harm his roommate. He also barricaded himself in his room and told staff he had a gun. He then refused to talk to staff members or see his psychiatrist.

Based on these events, staff at the group home filed an application to have J.K. involuntarily hospitalized under Iowa Code section 229.6 (2025). J.K. was taken to the hospital where a doctor again diagnosed him with schizoaffective disorder, filed a report saying he should be involuntarily committed, and administered medication to reduce his agitation and aggression. Following a hearing, a magistrate issued a hospitalization order finding J.K. was seriously mentally impaired and needed to be involuntarily committed. J.K. appealed to the district court. Following a hearing, the district court affirmed. J.K. appealed the district court's ruling. He challenges the finding that he is seriously mentally impaired.

## I. Standard of Review

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re V.H.*, 996 N.W.2d 530, 536 (Iowa 2023) (quoting *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013)). Each element required for involuntary commitment must be proved by clear and convincing evidence. *Id.* We are bound by the district court's fact findings if they are supported by substantial evidence. *Id.* "Evidence is substantial if a reasonable trier of fact could conclude the findings were

2

established by clear and convincing evidence." *Id.* (quoting *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998)).

## II.  Analysis

To establish serious mental impairment under Iowa Code section 229.1(22), the State must show that J.K. (1) has a mental illness, (2) lacks sufficient judgment to make responsible decisions related to hospitalization or medication as a result of his mental illness, and (3) meets any of the following four grounds:

> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
>
> d. Has a history of lack of compliance with treatment and any of the following applies:
>
> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
>
> (2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(22).  The third element of the test is known as the "endangerment element," and proof of that element is necessary to justify the significant deprivation of personal freedom resulting from civil commitment. *N.W. v. N.W.*, No. 25-0687, 2026 WL 44650, at *2 (Iowa Ct.

App. Jan. 7, 2026). On appeal, J.K. challenges the sufficiency of the evidence supporting all three elements, so we address each element in turn.

## A.    Mental Illness

With exceptions not applicable here, section 229.1(13) defines mental illness as "every type of mental disease or mental disorder."[1] The district court found that J.K. has a mental disease or disorder—specifically, schizoaffective disorder. J.K. challenges this finding. His challenge is based on the claim that the doctors who testified gave inconsistent diagnoses.

Substantial evidence supports the district court finding. A reasonable fact finder could conclude that J.K. was diagnosed with schizoaffective disorder before the incidents giving rise to this case. Further, two doctors testified—the first at the magistrate hearing and the second at the district court hearing. The first doctor diagnosed J.K. with schizoaffective disorder. J.K. highlights that this doctor failed to state facts supporting his conclusion in his physician's report for this case. But the court can also rely on testimony for those details. *B.B.*, 826 N.W.2d at 433 (relying on testimony when a physician's report was "short on specifics"). Here, the first doctor's testimony filled in details such that any failure to include them in the report is not fatal to the court's findings. *See id*. The second doctor noted the schizoaffective disorder diagnosis and did not disagree with it, but he also noted that J.K. may also have bipolar disorder. As the evidence is undisputed that J.K. has one or both of these disorders—and either constitutes a mental illness—the first element was established. *See In re J.K.*, No. 15-1621, 2016

---

[1] After J.K. was involuntarily committed, the Code was amended to move the definition of "mental illness" to subsection 229.1(15), but no change was made to the definition itself.

WL 3002811, at *3 (Iowa Ct. App. May 25, 2016) (finding sufficient evidence of mental illness even though doctors gave different diagnoses).

## B.    Judgmental Capacity

Mental illness alone does not establish grounds for commitment. *J.P.*, 574 N.W.2d at 343.  There must also be clear and convincing proof that the mental illness causes the person to "lack sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." *Id.* (internal quotation marks and citation omitted).

J.K. contends that he has sufficient judgment to make responsible decisions regarding his treatment.  In support of his contention, he points to his testimony that the drugs "take away [his] dopamine, which takes away [his] memory."  He claims his decision not to take his medication is a responsible one intended to avoid these side effects.

J.K.'s argument ignores the other evidence presented.  Doctors who examined J.K. testified that he could not make decisions regarding his treatment, and that was in part because he lacked insight into the fact that he has a mental illness.  The doctors' testimony is supported by other evidence. As soon as he became his own guardian and payee, he decided to stop taking his medications, which almost immediately caused him to become aggressive, paranoid, delusional, and threatening.  When he was hospitalized and put back on his medication, he showed marked improvement.  This evidence constitutes substantial evidence that supports the district court's finding that J.K. lacks the ability to make reasonable decisions regarding his hospitalization and treatment. *See Hutchison v. Shull*, 878 N.W.2d 221, 230 (Iowa 2016) ("The crucial question in determining whether substantial evidence supports a district court finding is not whether the evidence would

5

support a different finding, but whether the evidence supports the finding actually made.").

### C. Endangerment

J.K. also challenges the district court's finding that the third element for involuntary hospitalization was established. This "element 'requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *J.P.*, 574 N.W.2d at 344 (quoting *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986)). The danger posed "must be evidenced by a 'recent overt act, attempt or threat.'" *Id.* (quoting *Mohr*, 383 N.W.2d at 542).

Although the statute provides four ways to establish this element, the State relies only on the first—that J.K. "[i]s likely to physically injure [himself] or others if allowed to remain at liberty without treatment." Iowa Code § 229.1(22)(a). J.K. argues that *In re Foster* controls because, like in *Foster*, he was not the aggressor in the altercation with his roommate and there was no imminent likelihood that he would become violent or that anyone was fearful of him. 426 N.W.2d 374, 379 (Iowa 1988).

We are not persuaded by J.K.'s reliance on *Foster*. Even if neither J.K. nor the patient in *Foster* were the initial aggressors, J.K., unlike the patient in *Foster*, threatened to cause his roommate physical injury shortly before he was involuntarily committed. Threats alone are generally sufficient to meet the endangerment element, and a reasonable trier of fact could conclude by clear and convincing evidence that J.K. is likely to physically injure others based on his threat to do so. *See, e.g.*, *B.B.*, 826 N.W.2d at 433 (affirming commitment based on the respondent's threats); *In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010) (affirming commitment based, in part, on

threats to staff and their children). Therefore, the court's finding on this element is supported by substantial evidence.

## III. Conclusion

Substantial evidence supports the district court's findings that there is clear and convincing evidence of each element needed to establish serious mental impairment allowing for involuntary hospitalization or treatment, so we are bound by those findings. *See V.H.*, 996 N.W.2d at 536. Accordingly, we affirm.

**AFFIRMED.**